Parker, C. J.,
delivered the opinion of the Court.
In has been a question in the argument, whether a policy of assurance upon a life is a contract, which can be enforced by the laws of this State ; the law of England, as it is suggested, applicable to such contracts, never having been adopted and practised upon in this country.
It is true, that no precedent has been produced from our own records, of an action upon a policy of this nature. But whether this, has happened from the infrequency of disputes which have arisen, it being a subject of much less doubt and difficulty than marine insurances, or from the infrequency of such contracts, it is not possi ble for us to decide. By the common principles of law, however, all contracts fairly made, upon a valuable consideration, which infringe no law, and are not repugnant to the general policy of the laws, or to good morals, are valid, and may be enforced, or damages recovered for the breach of them.
It seems that these insurances are not favored in any of the commercial nations of Europe, except England ; several of them having expressly forbidden them, for what reasons, however, does not appear ; unless the reason given in France is the prevailing one, namely, “ that it is indecorous to set a price upon the life of man, and especially a freeman, which, as -they, say, is above all nrice.” It is not a little singular, that such a reason should be advanced fat *107 prohibiting these policies in France, where freedom has never been known to exist, and that it never should have been thought of in England, which for several centuries has been the country of established and regulated liberty.
This is a contract fairly made ; the premium is a sufficient consideration ; there is nothing on the face of it, * [*118] which leads to the violation of law ; nor any thing objectionable on the score of policy or morals. It must, then, be valid to support an action, until something is shown by the party refusing to perform it, in excuse of his non-performance.
It is said, that, being a contract of assurance, the law on the subject of marine insurance is applicable to it; and, therefore, unléss the assured had an interest in the subject-matter insured, he is not entitled to his action.
This position we agree to ; for, otherwise, it would be a mere wager-policy, which we think would be contrary to the general policy, of our laws, and therefore void. Had, then, the plaintiff an interest in the life of her brother, which was insured ?
The report states the facts, upon which that interest was supposed at the trial to exist. The plaintiff, a young female without property, was, and bad been for several years, supported and educated at the expense of her brother, who stood towards her in loco parentis. Nothing could show a stronger affection of a brother towards his sister, than that he should be willing to give so large a sum to secure her against the contingency of his death, which would otherwise have left her in absolute want. One per cent, per month upon $5000, taken on the life of a man of thirty-three years of age, in good health at the time, was a sufficient inducement to the underwriter to take at least common chances, and proved the strong disposition of the brother to secure his sister against the melancholy consequence to, her of his death. In common understanding no one would hesitate to say, that in the life of such a brother the sister had an interest; and few would limit that interest to the sum of $5000.
But, it is said, the interest must be a pecuniary, legal interest, to make the contract valid ; one that can be noticed and protected by the law ; such as the interest which a creditor has in the life of his debtor, a child in that of his parent, *&c. [*119] The former case, indeed, of the creditor would have no room for doubt.† But with respect to a child, for whose benefit a policy may be effected on the life of the parent, the interest, except the insurable one which may result from the legal obligation of the parent to save the child from public charity, is as precarious as that of a sister in the life of an affectionate brother. For, if the brother *108 may withdraw all support, so may the father, except as before stated. And yet a policy effected by a child upon the life of a father, who depended on some fund terminable by his death to support the child, would never be questioned ; although much more should be secured than the legal interest which the child had in the protection of his father. Indeed we are well satisfied that the interest of the plaintiff in the life of her brother is of a nature to entitle her to insure it. Nor can it be easily discerned, why the underwriters should make this a question after a loss has taken place, when it does not appear that any doubts existed when the contract Was made ; although the same subject was then in their contemplation.
As to the other objection, that the life insured was employed, during the continuance of the contract, in an illegal traffic, we do not think it can prevail to the prejudice of the plaintiff, who did not participate in the illegal employment, and, indeed, does not appear to have known of it.
The underwriters insure the life of Jabez Lord, for the benefit of the plaintiff, for the term of seven months ; and he is described in the policy as being about thirty-three years of age, “ and bound on a voyage to South America or elsewhere, and any other place he may proceed to from Boston.” This gave the utmost latitude to Jabez Lord, to go where he pleased at all times, and imposed no restriction whatever upon him, as to the place where he should exercise his industry and enterprise. Possibly, if he secretly intended, at the time the policy was subscribed, to visit some portion of the globe, where his life would be exposed to more than common hazard, and kept that intention concealed from the underwriters ; [*120] had he been interested himself *in the policy, or had his sister been privy to his intentions, and aided him in concealing them, such conduct might have been considered in the light of a fraudulent concealment; and, if the fact were material, the contract might have been avoided. '
But the jury have found, that there was no such concealment; and the objection now rests entirely upon the supposed illegality of the enterprise in which he was engaged.
It is a sufficient answer to this objection, that, whatever the law may be as to an insurance upon an illicit voyage, between the parties to the contract, the present plaintiff, being ignorant of any intended violation of the law, ought not to be affected by such illegality. Had the policy been effected for Jabez Lord himself, it might be questionable, as the underwriters had excepted no particular employment in which he might be engaged, and no cause of death but suicide and forfeiture of life for crime, whether his engagement in any traffic prohibited by law would have discharged their liability. If it would, it must be only because it mighr be thought just and legal ta *109 discourage contracts, which might tend to uphold enterprises for bidden by the laws.
It would be difficult, however, to maintain, that the executors of a man, whose life was insured for the benefit of his children, should be deprived of their right to enforce the contract because he had pursued a course of smuggling or counterfeiting; neither of these acts being excepted in the policy, and the party having died within the time, from a cause which was clearly at the risk of the underwriters A policy made for the purpose of enabling a man to commit crimes would undoubtedly be void. But one honestly made would seem not to be affected by the mdral conduct of the party who had procured it.
Perceiving nothing in this contract unfriendly to the morals or interests of the community; and no knowledge of an illegal intention being imputed to the plaintiff; we see no reason for setting aside the verdict. Judgment will therefore be entered upon it.†

 Von Lindenau vs. Desborough, 3 C. & P. 353. — Godsal vs. Boldero, 9 East, 72. — 2 Park, 639 - 640.

 Marshall, 3d ed, 771, 776.