ALBERT LOOMIS, Administrator, *vs.* EAGLE LIFE AND HEALTH
INSURANCE COMPANY.

A notice to a life insurance company, of the death of a person whose life is insured by
them, may refer, for proof of the death, to affidavits filed with the company by the
holder of another policy issued by them on the same life.

A father has an insurable interest in the life of his minor son.

ACTION OF CONTRACT upon a policy of insurance, dated February 2d 1849, for seven years, for the sum of $700 upon the life of Freedom Keith, a minor son of Bela M. Keith, the plaintiff's intestate, to whom this policy was made.

At the trial in the court of common pleas at October term 1853, before *Mellen, J.,* there was evidence of the following facts: Freedom was twenty years of age on the 6th of January 1849, and resided with his father in Manchester, Conn., and worked in a factory there; the father, with his other children, working in the same factory, and usually receiving the wages of all his children, which together with his own wages constituted the principal support of his family.

On the 17th of February 1849 Freedom sailed for California, having on the 8th of January previous made an agreement in writing with Aaron Cook, in consideration of the sum of $300 paid by Cook into the treasury of a trading and mining company of which Freedom was a member, to devote his services to said company during its continuance, and to pay half of his share of the profits to Cook; and his father assented to this agreement, and relinquished any claim to his services, so far as Cook was concerned; and supplied Freedom with an outfit, out of his former earnings. On the 2d of February 1849 Cook procured from the defendants a policy of insurance for $500 on Freedom's life. Freedom died on board of the ship on the 1st of December 1849, soon after arriving in California.

On the 11th of September 1851 Cook left with the defendants certain affidavits of the death of Keith; and on the 6th of February 1852 the plaintiff, in writing, notified the defendants

of the death of Freedom, and referred them for proof thereof to those affidavits.

The defendants contended that the plaintiff's intestate had no insurable interest in the life of Freedom Keith; that, if he had such insurable interest, it was incumbent upon the plaintiff to prove the amount of it; and that the preliminary proofs of death were insufficient, because the plaintiff could not avail himself, without the consent of the defendants, of the proofs presented by Cook under his policy.

But the judge ruled that upon the facts proved the intestate had an insurable interest to the amount of the policy, and that the proofs of death were sufficient; and directed the jury to return a verdict for the full amount of the policy; which they did; and the defendants alleged exceptions.

This case was argued in writing by *H. Vose & L. Norton,* for the plaintiff, and *H. Morris,* for the defendants, and decided in June 1855.

SHAW, C. J. Some question was made at the argument whether the proof of death was sufficient; but on that point we have no doubt that the evidence was sufficient to sustain the verdict for the plaintiff.

But the ground principally relied on is, that the assured had no pecuniary interest in the life of his son, at the time the policy was made, and no insurable interest at the time the loss occurred.

We understand that the law of Connecticut (where the parties resided) is similar to that of Massachusetts, and that by the law of both states a father who supports, maintains and educates a son, under twenty one years of age and not emancipated, is entitled to the earnings of such son, and may maintain an action for them. Here, when the father had in terms relinquished his right to a share in the son's earnings, for a valuable stipulation on the other side, designed and intended to increase those earnings, by a necessary implication he reserved his right to the other share of those earnings. According to any, the strictest, rule of construction, the assured in this case, we think, had a direct and pecuniary interest in the life of the *cestui que vie,* his

son. It is argued, that the time which would remain after his probable arrival in California, before becoming of age, would be so short, that his earnings, if any thing, would be very small. Supposing he was to have a passage of three or five months, he might still have five or six months to work in California; and this being a contract dealing with chances and probabilities, and even possibilities, and to be construed as such, it may well be supposed that the parties had it in contemplation that, by working a few weeks or days in a gold mine, or by a lucky hit in a single day, he might gain gold enough to make his share exceed the whole sum insured. But nearness or remoteness of this chance is immaterial; the parties regulate that matter for themselves, in fixing the sum to be insured and the rate of premium. It seems to us therefore that, according to the rule relied on by the defendants, the assured in the present case had a direct and pecuniary interest in the life of the son, sufficient to enable him to maintain this action.

But, upon broader and larger grounds, we are of opinion that, independently of the fact that the son was a minor, and the assured had a pecuniary interest in his earnings, the assured had an insurable interest sufficient to maintain this action.

The case in this state must be governed by the rules and principles of the common law, there being no regulation of the subject by statute. This was distinctly stated as the ground of decision in the leading and principal case decided in this commonwealth. *Lord* v. *Dall*, 12 Mass. 115. In reply to a query, whether an action would lie on a policy of insurance on life, the law of England never having been adopted and practised upon in this country, the court say : " It is true that no precedent has been produced from our own records of an action upon a policy of this nature." " By the common principles of law, however, all contracts fairly made, upon a valuable consideration, which infringe no law, and are not repugnant to the general policy of the laws, or to good morals, are valid, and may be enforced, or damages recovered for the breach of them." 12 Mass. 117.

In discussing the question in this commonwealth, we are to consider it solely as a question at common law, unaffected by

the *St. of* 14 G. 3, *c.* 48, passed about the time of the commencement of the Revolution, and never adopted in this state. All therefore which it seems necessary to show, in order to take the case out of the objection of being a wager policy, is that the insured has some interest in the life of the *cestui que vie ;* that his temporal affairs, his just hopes and well grounded expectations of support, of patronage, and advantage in life will be impaired ; so that the real purpose is not a wager, but to secure such advantages, supposed to depend on the life of another ; such, we suppose, would be sufficient to prevent it from being regarded as a mere wager. Whatever may be the nature of such interest, and whatever the amount insured, it can work no injury to the insurers, because the premium is proportioned to the amount ; and whether the insurance be to a large or small amount, the premium is computed to be a precise equivalent for the risk taken. Perhaps it would be difficult to lay down any general rule as to the nature and amount of interest which the assured must have. One thing may be taken as settled, that every man has an interest in his own life to any amount in which he chooses to value it, and may insure it accordingly.

We cannot doubt that a parent has an interest in the life of a child, and, *vice versa,* a child in the life of a parent; not merely on the ground of a provision of law that parents and grandparents, children and grandchildren, are bound to support their lineal kindred when they may stand in need of relief, but upon considerations of strong morals, and the force of natural affection between near kindred, *operating often more* efficaciously than those of positive law. In the case of *Lord* v. *Dall*, it was held that it might be inferred from particular circumstances.

" These insurances on lives," says Mr. Park, in his very able treatise, " when a loss happens upon them, must be paid according to the tenor of the agreement, in the full sum insured, as this sort of policy, from the nature of it, being on the life or death of man, does not admit of the distinction between total and partial losses." Park on Ins. (7th ed.) 645.

We are aware that it has been stated as upon good authority

(3 Kent Com. 6th ed. 368,) that where the insurance is upon the life of a debtor in behalf of a creditor, it is in effect a guaranty of the debt, and if the debt is paid, the insurance is at end, on the authority of *Godsall* v. *Boldero*, 9 East, 72; also, that a man has not such an interest in the life of his wife and child, merely in the character of husband or parent. *Halford* v. *Kymer*, 10 B. & C. 724. But we believe it is now settled, that these cases are not law, and that they arose partly from a misconstruction of the *St.* of 14 G. 3, c. 48.

We believe it is now conceded, that before that statute a policy on life was good at common law, and that the object of that statute was to prohibit wager policies. That it was not a declaratory act, but introduced a new law, was decided in the Irish court of exchequer chamber, in *British Ins. Co.* v. *Magee*, Cook & Alcock, 182, approved and confirmed by the case hereafter stated.

The construction put upon the statute by the court of king's bench in 1807 was not only that there must be an interest when the policy is made, to prevent its being a wager policy, but that it must continue to the time of the recovery, and if the debt is then paid, the interest is gone, and the plaintiff cannot recover. And so it has been held, that such a life policy, like a marine or fire insurance, is a contract of indemnity, and, as a legitimate consequence, that nothing can be recovered upon it but the balance of the debt. And in this case it was insisted at the trial as matter of defence, that the plaintiff could not recover without proving an existing debt, nor to any amount beyond the balance of the debt. Whereas it was contended that it was an independent and collateral contract; and if there was any debt due at the time from the *cestui que vie* to the assured, it was sufficient to satisfy the statute.

In this state of the question, the case of *Godsall* v. *Boldero*, 9 East, 72, was decided, in 1807. It was a policy upon the life of Mr. Pitt, in favor of the plaintiffs, coachmakers, to whom he was largely indebted; after Mr. Pitt's death, by the gratuitous act of the nation, a fund was raised by act of parliament, and furnished to the executors, by whom the plaintiffs were paid their

debt. That case was decided in favor of the defendants, on the specific ground that the policy was in effect a security for the payment of the debt only; that if the debt was fully paid by the executors, either from the assets of the deceased, or from funds gratuitously furnished them, it put an end to all claim of loss on the policy.

That case, though not entirely satisfactory, and though it was questioned whether it was decided upon the right principle, stood as a high authority, until a late period. It was cited in a case in this court, *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 1. That was a case where a mortgagee of real estate had made insurance for his own benefit, on his own interest as mortgagee, and paid the premium out of his own funds. The defendants claimed that, as their loss, when paid, would go to extinguish his debt, in whole or *pro tanto*, they were equitably entitled to an assignment of a proportionate part of the mortgage debt. But the court were of opinion, that such separate insurance by the mortgagee was a separate and distinct collateral contract, which the assured had a right to make and did make for his own use; that the payment of such loss was not a payment of the same debt or duty as the mortgage, and did not operate as payment of the mortgage debt, and therefore it was a contract in which the original debtor could claim no benefit. In referring to *Godsall* v. *Boldero*, the court remarked, that perhaps it was influenced ˉy the consideration, that it was the true purpose of the government, in honor of a distinguished public servant, that no one should suffer, by the nonpayment of Mr. Pitt's debts; so that when the original creditors were paid, it was in furtherance of the purposes of the country, that another party should not be declared liable.

We now come to the case of *Dalby* v. *India & London Life Assurance Co.*, decided in the exchequer chamber. 15 C. B. 365. By that case, *Godsall* v. *Boldero* is directly drawn in question and overruled. It decides that a policy of life insurance is not a contract of indemnity, but a contract in a certain event to pay a certain sum in consideration of an annual premium; that when a policy effected by a creditor on the life of his debtor is valid at

34\*

the time it is entered into, the ceasing of that interest before the death does not invalidate the insurance under *St.* 14 G. 3, *c.* 48. See also *Law* v. *London Indisputable Life Policy Co.* 1 Kay & Johns. 223.

The case of *Halford* v. *Kymer*, 10 B. & C. 724, in which it was held that a father, in his capacity as such, had no insurable interest in the life of his son, was decided expressly upon the terms of the *St.* of 14 G. 3, *c.* 48, and the insurance was held to be void by force of the statute.

As the *St.* of 14 G. 3, did not extend to Ireland, where one of the conditions in an Irish policy required that the assured should have an interest in the life insured, the court considered that all the circumstances of the case should be looked at; the effect of such a condition, in an Irish policy, must depend upon its express terms; and unless the intention was apparent, the court could not import into the contract the contents of the English statute. *Scott* v. *Roose*, Longfield & Townsend, 54. *British Ins. Co.* v. *Magee*, Cook & Alcock, 182.

As the English statute in terms has never been in force in this country, the case must be governed by the principles of the common law. *Prima facie* the plaintiff in the present case has an interest in the life of his son, the policy of insurance was a valid one, and the plaintiff is entitled to recover upon it.

*Exceptions overruled.*