No. 969.

## Nye *v.* Grand Lodge, Ancient Order of United Workmen of the State of Indiana, et al.

Life Insurance.—*Assignment of Policy.—Wagering Contract.—Law and Fact.*—Where a policy is valid at its inception, it may be assigned to one not having an interest in the life of the insured, when not used as a cloak for a wager; and where the assignee paid $300 for the assignment of a policy for $2,000, and agreed to pay the dues and assessments on the policy, in the absence of proof of any age or expectancy of life of the insured, the court can not say, as a matter of law, that the sale or assignment was tainted with the vice of gambling, such question usually being one of fact.

Same.—*Beneficiary Fund.—Disposition of by Insured.—Burden of Proof. —Appointee.*—Where the insured might have bequeathed the beneficiary fund to a person not a member of his family, dependent upon him, or related to him by blood, he may do the same thing by appointment; and when the appointee has made proof of the death of the insured, and produces the certificate, he has made a *prima facie* case, and the burden of proof is upon those who claim it against him to show the contrary.

Gavin, J., and Davis, C. J., dissent.

From the Marion Superior Court.

*F. M. Finch* and *J. A. Finch,* for appellant.

*S. M. Shepard,* for appellees.

Lotz, J.—The appellant, Nancy J. Nye, brought this action against the appellees.

From the allegations of her complaint, it appears, in brief, that she is the widow of Michael W. Nye; that the appellees Maria Lehr, John Nye and Benjamin F. Nye, are the children and heirs at law of Michael; that the Grand Lodge, Ancient Order of United Workmen, is a charitable and benevolent association, organized under the laws of the State of Indiana; that said order issues to each member thereof a certificate of membership, granting the privileges of the order and securing the payment of the sum of $2,000 on the death of such mem-

ber, to such person as may be designated by such member, who was eligible as a beneficiary under the constitution and by-laws of the society and the laws of the State, to hold insurance on the life of another; that Michael became a member of said order, and secured a certificate insuring his life in the sum of $2,000; that said certificate was not made payable to any person by designation, but remained in blank for the personal benefit of Michael; that in the year of 1885 the appellee Joseph H. Clark, for the purpose of speculation, bought said certificate from Michael; that said Clark was not related to nor dependent upon Michael, and Michael was not indebted to Clark in any sum; that Clark could lose nothing, either socially or pecuniarily, by the death of Michael; that the purchase was a wager on the life of Michael; that after the purchase of the certificate, Clark sent the same to the grand lodge and procured a new certificate to be issued on the life of Michael, in which Clark was named as the beneficiary; that said new certificate was issued in ignorance of the facts and contrary to the constitution and by-laws of the order; that said Michael died April 18, 1890, being, at the time, a member in good standing in said order, and that proof of his death was duly made.

Certain sections of the constitution and by-laws of the order were set out in the complaint, and it was averred that under such provisions Clark did not come within the classes of beneficiaries named therein, and that the appellant was entitled to the whole fund.

The appellee, the Grand Lodge, filed an interpleader and paid the money, $2,000, into court, and was discharged.

The appellee Clark answered the complaint (1) by the general denial, and (2) by a special answer, in which he claimed to be entitled to the whole of the fund.    He also

filed a cross-complaint, or counterclaim, against the appellant and his codefendants, in which he averred, in brief, that in 1885 the said Michael W. Nye was a member in good standing in said order, the A. O. U. W., and the holder of a certificate of membership therein; that said Michael was desirous of raising a sum of money to enable him to go into business on his own account, and applied to him (Clark) to procure money on said certificate; that upon investigation, he learned through the officers of a subordinate lodge, that such purchase would be legal and valid; and thereupon he agreed with said Michael that if he (Michael) would surrender his old certificate to him, and the said Michael and his wife and his children would sign and transfer said original certificate, he, the said Clark, would pay the said Michael the sum of $300, and, in addition, pay all dues that might be assessed against and required of the said Michael, by the rules and regulations of said order; that in accordance with said agreement, the said Michael and his wife (appellant) and their children did assign said certificate, in writing, to him, the said Clark; that said original certificate was surrendered by said Michael, and the said order issued a new one, in which the said Clark was named as the beneficiary therein; that said last named certificate was delivered to Clark, and said Clark paid Michael the sum of $300, and agreed thereafter to pay all dues and assessments made against said Michael; that since the issuing of said certificate and until the death of said Michael, he (Clark) paid to said order the sum of $135.30 on account of dues and assessments.

There was a prayer that the cross-complainant be awarded the whole of the fund paid into court.

The appellant replied the general denial to the second paragraph of answer, and also filed a special answer to the counterclaim.

The other appellees made default on both the complaint and cross-complaint.

The sufficiency of these pleadings is not discussed by counsel in this court. We have made this brief summary for the purpose of showing upon whom rested the burden of proving certain facts.

The issues joined were submitted to a jury for trial.

The facts, as shown by the evidence, are substantially as follows: The Grand Lodge, Ancient Order of United Workmen, is a corporation organized under the laws of the State of Indiana, and is a charitable and benevolent organization. The business affairs of the association are managed by grand and subordinate lodges, one of the latter being located in the city of Indianapolis, and designated as Union Lodge, No. 6.

In the constitution and by-laws of the order, it is provided, among other things, that the objects of the order shall be: "To create a fund for the benefit of the members during sickness or disability, and, in case of death, to pay a stipulated sum to such person or persons as may be designated by such member, thus enabling him to guarantee his family against want."

"The beneficiary shall be named in the beneficiary certificate, and shall be confined to one or more members of the family of the member, or some person or persons related to him by blood, or who shall be dependent upon him."

The purpose of the beneficiary department of the Grand Lodge of Indiana, A. O. U. W., is to establish a fund, to be known as the beneficiary fund, from which the heirs or legatees of a deceased member who shall have complied with the conditions hereinafter recited, shall be entitled to two thousand dollars, and said fund shall be used for no other purpose."

"If one or more of the beneficiaries shall die during

NOVEMBER TERM, 1893.          135

Nye o. Grand Lodge, Ancient Order of United Workmen of Ind., et al.

the lifetime of the member, the surviving beneficiary or
beneficiaries shall be entitled to the benefit equally, un-
less otherwise provided in the beneficiary certificate, and
if all the beneficiaries shall die during the lifetime of the
member, and he shall have made no other direction, the
benefit shall be paid to his widow, if living at the time
of his death; if he leaves no widow surviving him, then
said benefit shall be paid, share and share alike, to his
children.''

"Any member desiring to change his beneficiaries,
may do so in the following manner: He shall fill out
the blank form on the back of his beneficiary certificate
authorizing the change; he shall have his signature at-
tested by the recorder of his lodge, and the seal of his
lodge attached thereto, or attested by a civil officer under
his seal, when the member can not sign in the presence
of the recorder.   When this is done, he shall deliver his
beneficiary certificate to the recorder of his lodge, to-
gether with a fee of fifty cents.   The recorder shall for-
ward the said certificate to the grand recorder, who shall
make a record of the change on the books of the grand
lodge, and shall issue a new certificate in lieu thereof,
payable as directed on the back of the certificate.   The
new certificate shall bear the same number as the old
one, which shall be safely filed and preserved.   The pro-
visions hereof, in special cases, may be waived by the
grand lodge at its option.''

In 1873 or 1874 Michael W. Nye became a member of
Union Lodge, No. 6, and a beneficiary certificate was is-
sued to him by the Grand Lodge, the certificate being
numbered 38, and entitled him to participate in the bene-
ficiary fund in the sum of $2,000.   No beneficiary was
named therein, it being in blank.   He continued to be
a member of said order in good standing until the day
of his death, which occurred on the 18th day of April,

1890.   In the year of 1885, desiring to procure money with which to purchase a bath house and to engage in business, he employed a broker to sell his beneficiary certificate in said order.   The broker found a purchaser in the appellee, Joseph H. Clark.   The said Michael, in pursuance to the constitution and by-laws of the order, surrendered his certificate and had a new one issued in which Clark was named as the beneficiary.   Clark paid the said Michael the sum of $300 for such assignment, and at the same time, and as a part of the same transaction, the said Michael, the appellant Nancy J. Nye, Maria Lahr, Benjamin F. Nye, and John W. Nye, children of the said Michael, executed a written assignment of all their interest in said certificate to Clark.   Before Clark purchased the certificate, he consulted the officers of the subordinate lodge and was informed by them that he could lawfully purchase the same.   Michael paid the broker's commission of $20.   It was also a part of the contract of said assignment, that Clark should thereafter pay the assessments and dues that might be made against Michael, and Clark did pay the same until the death of Michael.   The date of this transaction was in September, 1885.   The evidence is silent as to the age of Michael at the time he sold the certificate, and it is also silent as to his age at the time of his death.   Nor was there any evidence given of his expectancy of life at the time of the sale.   There was no evidence given tending to show whether or not Clark was a member of the family of the said Michael, or was related to him by blood, dependent upon him or one of his heirs at law.

At the conclusion of the evidence, the court, of its own motion, instructed the jury to return a verdict for the appellee Clark, and rendered judgment in his favor, awarding him the whole of the fund paid into court.   A motion for a new trial was overruled.   Several errors

are assigned, but the ruling on the last motion is the only one discussed by counsel for appellant.

Appellant's contention is: (1) That these facts show that the assignment of the certificate was a cover for a mere wager, a speculation on the part of Clark on the duration of the life of Michael W. Nye, and that the assignment was therefore void. (2) That under the constitution and by-laws of the order, Clark could not be designated as a beneficiary, and that such pretended designation was illegal and equivalent to no designation, and that the appellant, as the widow of Michael W. Nye, is entitled to the whole of the fund, or at least so much thereof as remains after reimbursing Clark for all his legitimate charges against the same.

The appellee Clark contends: (1) That the tendency of the recent adjudications is to permit policies of insurance to be sold and assigned like any other choses in action. (2) That the validity of the assignment can only be questioned by the order, the A. O. U. W.; and that, as it has voluntarily paid the money in discharge of its contract, the appellant can not assail the assignment, even though it were conceded that the assignment was a cover for a wager, or that Clark did not come within the classes designated in the constitution and by-laws of the order. (3) That in any event the assignment is *prima facie* valid, and that the burden is upon the appellant to prove that it was a cover for a wager, or to prove that Clark did not come within any of the classes designated in the constitution and by-laws of the order. (4) That the appellant is estopped to question the validity of the assignment by the written instrument which she executed as a part thereof.

There is a marked conflict between the adjudicated cases bearing upon some of the propositions here involved. Owing to this conflict, the questions here pre-

sented are not free from difficulty. In considering them, we may be materially aided by a brief recurrence to the origin and growth of the business of insurance and of the principles which underlie it. Nearly every kind of property is exposed to injury or destruction. Of those causes which produce disaster, the most common are fire, shipwreck, and premature death. A person in good health, in the full possession of all his faculties, has the power to earn and accumulate property. These future earnings may be of great value to those dependent upon him, or to his creditors. These earnings may be destroyed by his premature death. Life insurance has for its object the protection of these future earnings.

In the complexity of modern society, property may also be exposed to certain artificial losses, such as insolvencies, failure of title and the like. The exposure of property to these various hazards may be very common, but loss actually occurs in comparatively few instances. It is difficult or impossible to predict or prevent the happening of the events which produce the loss; but is frequently of the greatest moment to those most deeply concerned to guard against the loss which their occurrence entails. This end may be accomplished by means of a general fund obtained by imposing a small contribution upon the many who are exposed to the common peril, from which the few who actually suffer, may be made whole. To secure this indemnity against loss gave rise to and lies at the foundation of the business of insurance.

As a business, it is the system of distributing losses upon the many who are exposed to the common hazard. Its importance has grown with the extension of trade and commerce and the necessities of civilized life. Marine underwriting lays claim to high antiquity. Traces of its existence are found under the early Roman Emperors.

It came into prominence among the Lombards, of Northern Italy, during the revival of commerce in the twelfth and thirteenth centuries. The principles and methods of marine insurance were easily and readily extended to the hazards which surrounded like property upon land. The controlling principle in a contract of fire or marine insurance has ever been that of indemnity. The insurer contracts to indemnify the assured for what he may actually lose by the happening of the events upon which that insurer's liability is to arise. Under no circumstance is the assured in theory permitted to make a profit of his loss. If this were not so, the two parties to the contract would not have a common interest in the preservation of the thing insured, and the contract would create a desire for the happening of the event insured against. When the insured can only receive compensation for the loss which he may actually sustain, the temptation to defraud and carelessness in exposing the property are removed.

Life insurance, according to the authorities, is of later origin than fire and marine insurance, but the same general principles which underlie them governs life insurance. The indemnity feature in life insurance is not always apparent. Indeed, the great weight of authority is to the effect that the element of indemnity is not necessary to support a contract of life insurance. *Dalby* v. *India, etc., Life Assurance Co.,* 15 Com. B. 365; *Insurance Co.* v. *Bailey,* 13 Wall. 616; *Loomis, Admr.,* v. *Eagle Life, etc., Ins. Co.,* 6 Gray, 396; *Lord* v. *Dall,* 12 Mass. 118; *Trenton Mut. Life Ins. Co.* v. *Johnson,* 4 Zab. 576.

In 1 Biddle on Insurance, section 185, it is said that ''It may be laid down as nearly the universal rule that at the present time, either by statute or judicial decision, an interest is necessary to support a life policy. And it may also be asserted with the same universality that the

courts have decided that a life policy is not a contract of indemnity.''

The interest which one has in his own life, or in the life of another (unless it be a debtor), is difficult to estimate in dollars and cents, hence it is said that strict indemnity finds no place in life insurance.

Mr. May, in his excellent work on Insurance, section 7, takes issue with the current authorities, and logically shows that there is no difference between valued policies in fire and marine insurance, and a policy of life insurance. In each case the value of the interest is agreed upon in advance, and the purpose of the contract is to indemnify the insured to the extent of the agreed value.

Life insurance has been defined to be a contract in which one party agrees to pay a given sum upon the happening of a particular event, contingent upon the duration of human life, in consideration of the immediate payment of a smaller sum, or certain equivalent periodical payments, by another. Bunyan Ins., 1; *Dalby* v. *India, etc., Life Assurance Co., supra.*

Life insurance and fire and marine insurance have much in common, and yet there are essential differences between it and them. In the latter the loss may or may not occur, and should it occur it may be total or partial. While, in the ordinary life insurance, the event insured against is certain to occur, and the time of the happening is the only contingent element. The person for whose benefit the insurance is written, his heirs or assigns, is certain to realize the sum named in the contract. As the expectancy of life decreases the value of the policy increases.

The reverse of this is true in fire and marine insurance. As the time for which the policy was written grows shorter its value decreases. Insurance is sometimes spoken of as an aleatory contract, or one involving

risk or speculation, and it certainly is a contract of mutual risk, wherein the premium is risked against the chance of loss. But it is not, ordinarily, a wagering or gambling contract. Although risk is of the essence of the contract, it exists before the contract is executed, and the assured is moved to effect the contract by reason of the existence of the risk; while in a purely wagering contract the risk is created by the contract itself. If the assured have no interest whatever in the thing or life insured, he sustains no risk. The thing or the life which may be the subject of insurance, it is true, is exposed to the hazard of loss, still the person who has no interest therein does not bear the risk. If one take out a policy of insurance upon the life of a person in whom he has no interest whatever his risk is created by the contract itself, and it falls within the category of wagering or gambling contracts.

It has become a fixed rule in life insurance, that the assured must have an interest of some kind in the life of the person insured in order to take the policy out of the category of wagering contracts. Another reason sometimes given for this rule is that it is against public policy and has a demoralizing influence for one person to be interested in the death rather than in the life of another. This latter reason is based upon the supposition that the temptation, on the part of the assured, to destroy the life of the insured must be counterbalanced by the existence of an insurable interest in the life of the insured.

This doctrine, that the assured must have an interest in the life of the person insured, is expressly condemned by Mr. Cooke on Life Insurance, section 58. He characterizes it as a false, artificial and confusing restriction as to the class of persons who may obtain the benefit. And concerning the last reason, he says: "But the theory that it is contrary to public policy, that one per-

son should have an expectation of a benefit conditioned on the happening of the death of another, finds little, if any, support from the rules applied to analogous cases; for it is just this expectation that exists in case of a devise or legacy, or in case of dower and other life tenancies; yet it never seems to have been seriously suggested that on that ground devises, legacies or life tenancies are invalid, or contrary to public policy.''

The view maintained by Mr. Cooke is supported by the adjudications of Ireland, New Jersey, Rhode Island and perhaps of some other States.

The rule adopted by the courts of England and of the United States generally, and by the Supreme Court of this State, is that the assured must have an insurable interest in the life of the person insured. *Franklin Life Ins Co.* v. *Hazzard*, 41 Ind. 116; *Franklin Life Ins. Co.* v. *Sefton*, 53 Ind. 380; *Continental Life Ins. Co.* v. *Volger*, 89 Ind. 572.

As to what constitutes an insurable interest has never been satisfactorily and clearly defined, although eminent courts have undertaken it. *Loomis* v. *Eagle Life, etc., Ins. Co.*, 6 Gray, 396; *Warnock* v. *Davis*, 104 U. S. 775; *Carson's Appeal*, 113 Pa. St. 438.

The American rule upon the subject of an insurable interest is much less rigid than the English, as to the nature of the interest required.

The English rule is affected more or less by the statute against gambling, and ''An insurable interest must be pecuniary; no ties of blood or affection are sufficient.''

The rule adopted by the American courts generally is that the interest need not necessarily be a pecuniary one. Bliss Life Ins., section 21.

But the Supreme Court of this State, in several decisions, has intimated that the interest must be pecuniary.

*Continental Life Ins. Co.* v. *Volger, supra; Burton* v. *Connecticut, etc., Life Ins. Co.,* 119 Ind. 207.

Every person has an insurable interest in his own life to an unlimited extent. He may insure it for the benefit of his personal representatives, or for the benefit of a third person. Bliss Life Ins., section 26; *Provident Life Ins. Co.* v. *Baum,* 29 Ind. 236; *Elkhart Mut. Aid, etc., Ass'n* v. *Houghton,* 103 Ind. 286; *Milner* v. *Bowman,* 119 Ind. 448 (454).

If a beneficiary be named who has no interest in the life of the insured, and the premium be paid by the insured, the contract does not fall within the inhibition of being against public policy. Whatever demoralizing influence there may be in the fact that the beneficiary is interested in the early death of the insured exerts its full force under such circumstances. As the insured is permitted to choose his own beneficiary, and as the law recognizes the ties of friendship and of moral obligations, it is presumed that these conditions counterbalance the baneful influences of being interested in the early death of the insured. As long as the insured pays the premiums, it is a matter of no concern, either to the insurer or the public, that the beneficiary has no insurable interest. If, however, the beneficiary pays the premiums, then the contract may fall under the ban of the law. The contract can not be made a cover for a mere wager. The same rule holds good with reference to the assignment of a policy. The assignment can not be made a cover for a wager. But a policy obtained by one upon his own life for the benefit of another, or assigned to another, and such other pays the premiums, is not necessarily void.

Mr. Bliss, in his work on Life Insurance, section 26, says: "A person has undoubtedly an insurable interest in his own life, and that interest supports a policy, whether he makes the loss payable to himself, his execu-

tors or his assigns, or to a nominee or appointee named in the policy. Nor is a policy obtained by one on his own life for the benefit of another, * * necessarily void. The question is whatever the policy was in fact intended to be what it purports to be, or whether the form was adapted as a cover for a mere wager. If the plaintiff and the insured confederated together to procure a policy for the plaintiff's benefit, when he is not and does not expect to be a creditor of the insured, and with a view of having the policy assigned to him without consideration, the policy is void.''

This language was quoted with approval by the Supreme Court of this State in *Elkhart Mut. Aid, etc., Ass'n* v. *Houghton, supra.*

A creditor has an insurable interest in the life of his debtor, for, while the debtor's life continues, the power to acquire and pay are among the probabilities and possibilities. But neither can this interest be made a cover for a wager. While it is undoubtedly true that when a policy is taken upon the life of another, the assured must have some interest in the life of the insured in order to take it out of the class of wagering contracts, it is also true that one who has effected a valid insurance on his own life may dispose of it as he sees fit, and it is immaterial that the assignee has no interest in the life of the insured.

In *Olmstead* v. *Keyes,* 85 N. Y. 593, Earl, J., after reviewing the authorities bearing upon the question of assignment, says: ''The rule, as gathered from these authorities, is that where one takes out a policy upon his own life as an honest and *bona fide* transaction, and the amount insured is made payable to a person having no interest in the life, or where such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the assignee in the other may hold and en-

force the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming and wagering policies. It follows, therefore, that one may, with the consent of the insurer, deal with a valid life policy as he could with any other chose in action, selling it, assigning it, disposing of it, and bequeathing it by will, and it has been well said that if he could not do this life policies would be deprived of a large share of their utility and value."

There are some cases that seemingly hold that an assignment of a policy to one who has no interest in the life of the insured is void. But these cases, when carefully examined, do not bear out such conclusion.

The case of *Franklin Life Ins. Co.* v. *Hazzard, supra,* is the one upon which nearly all the others are founded. Whilst there are expressions in that case which seemingly indicate that an assignment to one that has no interest in the life insured is void, the decision actually turned upon another point.

The assignment was held void, not because the assignee had no interest, but because of the disproportion between the amount paid for it, $20, and the amount of the policy, $3,000. The court saying that "life assurance policies are assignable, to be sure, but, in our opinion, they are not assignable to one who buys them merely as a matter of speculation, without interest in the life of the assured."

In *Hutson, Admr.,* v. *Merrifield, Admr.,* 51 Ind. 24, it was said that "The party holding and owning such a policy, whether on the life of another or on his own life, has a valuable interest in it, which he may assign, either absolutely or by way of security, and it is assignable like any other chose in action."

VOL. 9—10

In *Franklin Life Ins. Co.* v. *Sefton, supra,* Chief Justice WORDEN, who pronounced the opinion in *Franklin Life Ins. Co.* v. *Hazzard,* said: "It may be added that where the policy-holder dies before the death of the party whose life is insured, perhaps the administrator of the holder could, for the purpose of converting the assets into money and settling up the estate in due course of law, sell the policy to any one who might choose to become the purchaser."

The chief justice, in this case, expressly affirmed the doctrine of *Franklin Life Ins. Co.* v. *Hazzard, supra.*

From this it is clear that that case turned upon the disparity between the price paid for the assignment and the amount of the insurance, and not upon the want of interest in the life of the insured.

*Cammack* v. *Lewis,* 15 Wall. 643, and *Warnock* v. *Davis, supra,* were cases in which the policies were procured to be taken out by the assignees in order that the policies might be assigned to them, under such circumstances as they might well be held to be a cloak for wagering policies. The statement contained in the latter case, that "the assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of the policy in his name," is a mere dictum, as it was not necessary to the decision of the case. The doctrine that a life policy, valid at its inception, may be assigned to one not having an interest in the life of the insured when not used as a cloak for a wager is sustained by abundant authority. *St. John* v. *American Mut. Life Ins. Co.,* 13 N. Y. 31; *Valton* v. *National Fund Life, etc., Co.,* 20 N. Y. 32; *Mutual Life Ins. Co.* v. *Allen,* 138 Mass. 24; *Eckel* v. *Renner,* 41 Ohio St. 232; *Martin* v. *Stubbings,* 126 Ill. 387; *Fitzpatrick* v. *Hartford Life, etc., Ins. Co.,* 56 Conn. 116; *Clark, Admr.,* v. *Allen,* 11 R. I. 439; *Ritter* v. *Smith, Admx.,* 70 Md.

261; *Souder* v. *Home Friendly Soc.*, 20 Atl. Rep. 137; *Ashley* v. *Ashley*, 3 Sim. (Eng. Ch.) 149; *Bursinger* v. *Bank of Watertown*, 67 Wis. 75.

"A man may have the best reason for wishing to dispose of the policy on his life. The exigencies of business or absolute necessity may require him to do so. He may have paid large sums in premiums and afterwards become unable to pay more, and if he is not allowed to sell or assign on the best terms he can make, the policy must be lapsed and lost. To impair the value and utility of his policy or require him to lose it on the ground that, if he were to sell or assign it, the assignee or purchaser would have a motive to kill him, or that any sale or assignment he might be able to effect with one who had no insurable interest in his life would be tainted with the vice of gambling, is, as a matter of law, extremely fanciful and unsatisfactory." *Murphy, Admr.,* v. *Red*, 64 Miss. 614.

It is an exceptional case where the court may rule as a matter of law that a policy or the assignment of a policy is void as a wagering contract. In the case in hearing, the appellee Clark paid $300 and agreed to pay the dues and assessments for the policy. In the absence of the proof of any age or expectancy of life of the insured, we can not say that the sale or assignment was tainted with the vice of gambling.

In *Ulrich* v. *Reinoehl*, 143 Pa. St. 238, 22 Atl. Rep. 862, creditors insured their debtor, a healthy man of 42 years, in the sum of $3,000, to protect a debt of about $100. The expectancy of life of the insured, according to the Carlisle tables, was 26 years, and the assessment and annual dues during such time would have, together with the interest, amounted to $4,336.31. It was held not a gambling transaction and that a recovery for the full amount of the policy could be sustained.

In *Amick* v. *Butler, Admr.*, 111 Ind. 578 (584), Judge MITCHELL said: "The policy can not, however, be limited to the amount of the debt. If it were otherwise the creditor would inevitably be compelled to lose whatever sums he might be required to pay in effecting the insurance and paying premiums. The beneficiary takes the chances of all future contingencies, including the continued solvency of the company; or if it be a company in which the fund is to be accumulated by assessments upon the members, that a sufficient number will continue therein to pay the debt and reimburse him for his advances."

The appellant claims the money as the widow of Michael W. Nye. In her complaint, she averred that the designation of Clark as the beneficiary was nugatory because he did not come within any of the classes named in the constitution and by-laws of the order.

For many purposes, such associations as the appellee, the A. O. U. W., are insurance companies, and the certificate issued by them is governed by the same rules applicable to insurance policies. There are, however, essential differences between them. The most usual is the power on the part of the insured in such associations to change the beneficiary. In the ordinary life insurance, the beneficiary named in the policy acquires an interest in the policy, but in such charitable associations, the beneficiary acquires no vested interest until the death of the insured. *Holland, Guar.*, v. *Taylor*, 111 Ind. 121; *Masonic Mut. Ben. Soc.*, etc., v. *Burkhart*, 110 Ind. 189.

The person whose life is insured may change the beneficiary at any time by complying with the regulations of such association. Section 3850, R. S. 1881.

It is also well settled that persons who become members of mutual insurance companies are bound to take notice of the constitution and by-laws of the company,

and such by-laws enter into and become a part of the contract of insurance, the same as if they were written into the certificate. *Holland* v. *Taylor, supra; Bauer* v. *Samson Lodge, etc.,* 102 Ind. 262.

The object and purposes of the benevolent association must be kept in view in construing its constitution and by-laws, and the certificate of membership. If any person should be designated as a beneficiary who does not come within the classes named, the designation is invalid. *Daniels* v. *Pratt,* 143 Mass. 216 (221); *Rindge* v. *New Eng. Mut. Aid Soc.,* 146 Mass. 286.

When the class of persons to be benefited are designated, the corporation has no power or authority to create a fund for other persons than the classes named. *American Legion of Honor* v. *Perry,* 140 Mass. 580; *Elsey* v. *Odd Fellows Mut. Relief Ass'n,* 142 Mass. 224.

And a member of such society is powerless to divert the fund from the appointed channel. *American Legion of Honor* v. *Smith,* 45 N. J. Eq. 466.

The association can only pay the fund to the persons designated in its constitution and by-laws, or the statute creating it. And if it should promise to pay to some other person the promise is void. *Britton* v. *Royal Arcanum,* 46 N. J. Eq. 102; *Knights of Honor* v. *Nairn,* 60 Mich. 44; *Michigan Mut. Ben. Ass'n* v. *Rolfe,* 76 Mich. 146; *Sanger* v. *Rothschild,* 123 N. Y. 577.

If the first clause of the constitution and by-laws above set out be considered as standing alone, the beneficiary fund payable at the death of the member must be paid to such person or persons as the member may designate. It does not confine the beneficiary to a member of his family, for he may have no family. The words, "thus enabling him to guarantee his family against want," are simply suggestive of what may be done by the member. They are words of recommendation, or express the wish

and desire of the association. The second clause set out defines what person or persons may be designated as beneficiaries. Considering it alone, the beneficiary is limited to some one of the family of the deceased member, or to one related to him by blood, or dependent upon him. If we consider these words in their broadest meaning, they will include many classes of persons. The word family, in one of its broadest meanings, includes all those who have descended from one common progenitor, those of the same blood. In a less comprehensive sense it means a collective body of persons living together and constituting one household. In a still more limited sense, it means father, mother, and children. Blood relationship is a term of very comprehensive meaning. It includes those persons who are of the same family stock, or descended from a common ancestor. A dependent is one who relies for support on another in some way. *Ballou* v. *Gile, Admr.*, 50 Wis. 619.

Those who may be dependent upon another for support and maintenance may not be of the family or related by blood to the member. It is a question of fact, and not of law, to determine who are members of a family, or of blood relationship, or dependents. *American Legion of Honor* v. *Perry*, 140 Mass. 590.

The third clause provides that the "heirs and legatees of the deceased member shall be entitled to two thousand dollars, and said fund shall be used for no other purpose." An heir is one upon whom the law casts an estate immediately upon the death of an ancestor; one who succeeds to the estate of a deceased person by operation of law. A legacy is a testamentary disposition of personal property, and a legatee is a person to whom the bequest is made.

These different clauses, considered separately, lead to

conflicting conclusions.   The first does not put any limitation upon the persons who may be beneficiaries;   the second limits them to members of the family, dependants, and blood relatives;   the third permits heirs and legatees to become beneficiaries.   They must all be construed together, and the intention and purposes of the association ascertained, if possible.

In *Lamont* v. *Iowa Legion of Honor*, 31 Fed. Rep. 177, by article 1 of the constitution of the order, it was declared to be the business and object of the order "to promote fraternity and afford financial aid and benefit to the widows, orphans and heirs, or devisees of the deceased members."   By article 7, it was provided that upon the death of a member, such person or persons as the member may have directed, subject to the limitations of article 1, should be entitled to the beneficiary fund. Shiras, J., said:   "It is evident that the word 'heirs' is used, not in its restricted sense, but to include any one to whom the estate of the deceased might pass by operation of law;   and this would, in many cases, include persons who were but distantly related by blood to the deceased   member, who   had not in fact ever been members of the family, and with whom, perhaps, he had no personal acquaintance.   But, in addition to the widows, orphans, and heirs, it is also provided that aid was to be afforded to 'devisees.'   It is clear that this word can not be intended to bear the technical legal meaning of one to whom real estate is given by the last will of another. *   *   *   The word 'devisee,' therefore, is used in its primary sense of one *separated* or *designated*."

The use of the word legatee in the constitution and by-laws of the A. O. U. W. is the recognition of the right of a member to dispose of the beneficiary fund by will.   If Michael W. Nye might have bequeathed the beneficiary fund to a person not a member of his family,

dependent upon him, or related to him by blood, we know of no substantial reason why he might not do the same thing by appointment. Clark was named as the beneficiary in the certificate.

It is averred in the counterclaim, and was proven on the trial, that, before Clark purchased the certificate, he consulted the officers of the subordinate lodge as to his right to purchase the same, and was informed by them that such purchase would be valid. It was also averred and proved that the appellant consented to and joined in the sale or assignment. The officers of the association were certainly proper persons to construe the constitution and by-laws, and to determine what persons came within the classes therein designated. If this action were against the A. O. U. W., we think that when Clark produced his certificate and made proof of the acts and conduct of the officers, as averred, he would have made a *prima facie* case. The appellant is in no better position than the order.

The burden was upon the appellant to show that he did not come within the classes provided in the constitution and by-laws. In the absence of any evidence whatever on this subject, we think the appellant has failed to show any right to the fund.

Turning our attention to the rights of the appellee Clark, on his counterclaim, we wish first to allude to certain rules of pleading and practice.

If a plaintiff declare upon a policy of insurance issued on the life of another, he must aver and prove that he had an interest in the life of the person insured. But if he be named as the beneficiary therein, he is not required to plead or prove that he had an interest in the life of the person insured. *Continental Life Ins. Co.* v. *Volger,* 89 Ind. 572 (575); *Provident Ins. Co.* v. *Baum, supra; Burton* v. *Connecticut Mut. Life Ins. Co.,* 119

Ind. 207; *Elkhart Mut. Aid, etc., Ass'n* v. *Houghton, supra.*

The certificate being made payable directly to Clark, he was not required to show affirmatively that he had come within the classes provided for in the constitution and by-laws of the order. When he made proof of the death of Michael W. Nye, and produced the certificate, he had established a *prima facie* case. *Supreme Lodge Knights of Honor, etc.,* v. *Johnson,* 78 Ind. 110 (113).

It devolved upon those who charged that he did not come within the classes named to prove the fact. *Prima facie,* the policy belongs to the person in whose name it is effected, and the *onus* is on those who claim it against him to show the contrary. *Bruce* v. *Garden,* L. R. 5 Ch. App. 32.

Clark's counterclaim contained several unnecessary allegations, but there was nothing in it that required him to show that his purchase of the certificate did not come under the ban of wagering contracts, or that he was within the classes of beneficiaries named.

Having reached the conclusion that the judgment must be affirmed, it is unnecessary to consider the other questions discussed. We may remark, however, *en passant,* that where money has been collected upon a policy which had its origin in a wager, or where an improper beneficiary was named, or where the insurance is taken out by a debtor as a security for the benefit of his creditor, the expense of procuring the policy being borne by the debtor, the weight of authority justifies the conclusion in either case that the amount collected, less the amount advanced, or the debt secured, may be recovered by the personal representatives of the person insured. *Commack* v. *Lewis, supra; Page* v. *Burnstine,* 102 U. S. 664; *Warnock* v. *Davis, supra; Dutton* v. *Willner,* 52 N. Y. 312; *Drysdale.* v. *Piggott,* 8 De Gex, M. & G. 546;

*Lea* v. *Hinton*, 5 De Gex, M. & G. 823; *Gilbert* v. *Moose's Admrs.*, 104 Pa. St. 74; *Amick* v. *Butler, supra.*

In the case of a creditor insuring the life of his debtor, the law requires distinct evidence of the contract that the debtor has agreed to pay the premiums. In such a case the policy will be held in trust for the debtor or his representatives. *Amick* v. *Butler, supra; Bruce* v. *Garden, supra; Franklin Life Ins. Co.* v. *Sefton, supra.*

There are cases, respectable in number and authority, which hold that the rules of the society or corporation are made for its benefit and protection, and that if the association waives its rights thereunder, and pays the money to the person designated, no contestant for the money can take advantage of the rules and by-laws of the order. *Johnson* v. *Knights of Honor*, 13 S. W. Rep. 794; *Stoelker* v. *Thornton*, 6 So. Rep. 680; *Martin* v. *Stubbings*, 18 N. E. Rep. 657; *Knights of Honor* v. *Watson*, 15 Atl. Rep. 125; *Brown* v. *Mansur*, 64 N. H. 39.

Judgment affirmed at costs of appellant.

GAVIN, J., and DAVIS, C. J., dissent.

Filed Feb. 3, 1894.