No. 1,484.

THE SUPREME LODGE KNIGHTS OF HONOR v. METCALF.

INSURANCE.—*False Representation.—Pleading.—Answer.*—An answer averring that assured obtained admission to a mutual, fraternal and beneficial insurance association, by falsely representing his age as 49, when he was really 60, when the constitution and by-laws of the

association prohibited the admission of members over 55 years of age, is bad, if it does not show a tender-back of the money received by said association from assured.

SAME.—*Purchaser of Benefit Certificate.*—If the purchaser of a benefit certificate was not elgible to become a beneficiary, or the purchase was purely speculative, still he should recover the money paid.

SAME.—*Evidence.*—Evidence of the age of the assured is admissible in an action on a benefit certificate, purchased by one who' had no interest in the life of the assured, and who kept up the payments until his death, under a defense that such purchase was for merely speculative purposes and in the nature of a wager.

From the Marion Superior Court.

*D. W. Howe, C. F. Coffin* and *F. H. Bacon,* for appellant.

*J. S. Duncan* and *C. W. Smith,* for appellee.

GAVIN, C. J.—The appellee sued the appellant upon a benefit certificate issued in 1881 to one Nye, but naming the appellee as the beneficiary. Nye became a member in 1874. In 1881 he was poor and unable to meet his assessments, nor would the members of his family provide for them. He then arranged with Olin and Metcalf to pay him $300.00 and to continue to pay his dues and assessments, they to have the proceeds of the certificate. In pursuance of this arrangement the old certificate was surrendered and a new one issued payable to Olin and Metcalf. Metcalf afterwards succeeded to Olin's rights and paid the dues and assessments until Nye's death in 1890. By the transaction, Nye obtained the $300.00 and received also about $500.00 sick benefits in addition to whatever other advantages he may have derived from the membership, while Metcalf paid out about $650.00, for which he claims to receive the $2,000.00 proceeds of the certificate. Olin and Metcalf were in no way related to or connected with Nye, nor were they his creditors nor possessed of any insurable interest in his life. They were simply purchasers of his certificate.

Appellant is not merely a mutual insurance com-

pany, but a fraternal and beneficial association, organized for moral instruction and scientific purposes, for the mutual assistance of its members and for the promotion of benevolence and charity, for the establishment of a widows and orphans' benefit fund. From the proceeds of this latter fund, created by special assessments upon all the active members of the fraternity, the beneficiary certificates are paid.

Numerous interesting and important questions have been presented and argued by counsel, which, in the view we take of the case, need not now be passed upon.

By one answer appellant sets up that, by the constitution and by-laws of the lodge, it was prohibited from taking in persons over 55 years of age, and that Nye obtained admission by falsely representing his age as 49, when it was really 60. It is insisted that this paragraph was bad because it fails to show a tender back to Metcalf of the money received by appellant under the contract. The law was so declared in *Gray* v. *Nat. Ben. Society*, 111 Ind. 531, and while some members of the court doubt the correctness of the rule as there laid down, when applied to insurance contracts, the majority is of opinion that, in this case at least, we should not now depart from it. Appellant insists, most earnestly, that the transfer of the insurance to appellee cannot be upheld, because it was contrary to public policy as a wagering contract.

Appellee, on the other hand, asserts that there is no general rule applicable to all cases, but that each case must be considered upon its own facts; that "the real point in every case to be determined, is whether the transaction was an honest, *bona fide* one, or a mere sham and cover for a wager."

It might be said, with much plausibility and force, that considering the peculiar character and purposes

of such organizations as this, the fact that there is no reserve fund and no surrender value to the certificate, and that the right to share in the benefit fund might be entirely destroyed by the expulsion of the member from the society by reason of some moral delinquency or misconduct of the member, there is, in such certificates, no proper basis for business investment by an outsider, but that the purchase of such certificate, by one having no interest in the life of the assured, must necessarily be speculation pure and simple.

Assuming, for the purposes of this case, appellee's position to be correct, and applying to the case in hand that rule, we are of opinion that the court erred in refusing to permit appellant to prove the age of Nye at the time of the transfer.

This was clearly a material factor in gauging the character of the transaction. This was plainly recognized by this court in the case of *Nye* v. *Grand Lodge*, 9 Ind. App. 131, where the court says, on page 147, "In the absence of the proof of any age or expectancy of life of the insured, we cannot say that the sale or assignment was tainted with the vice of gambling." In this case the appellant sought to apprise the court of the very fact without which it has held it could not determine the question.

What weight the evidence may have had with the jury we cannot, of course, declare, but the facts are not such as to authorize us to say that appellant was not harmed by its exclusion.

If it was for the jury to determine the character of the transaction from the facts of this case, the facts should have been presented to it. Olin saw and conversed with Nye; knew he was an old man and not in good health. It is true he testified that he did not know how old Nye was; that he never thought of his age; that it never occurred to him; and appellee, who

also talked with him, said he did not consider his age nor the possibilities of life, but thought he was a middle-aged man about 50; but the jury was not bound by these answers so as to eliminate from the case this important fact of his actual age.

It has been suggested that this evidence was not applicable to the issues joined, but when we consider the character of the complaint, the construction placed thereon by counsel, and the course of the trial, we do not think it can be so held.

The complaint in this case is not confined to a mere statement of the issuing of the certificate payable to the beneficiary, the death of the member and the consequent right of action, but sets out fully and in detail the facts and circumstances upon which the plaintiff evidently relied to show that he was not a mere ordinary beneficiary, but was the owner by purchase of the policy or certificate.

The case was tried by counsel on both sides, and presented by them in this court upon the theory that the issues embraced the question of whether or not the rights of appellee were acquired through a wagering transaction, and thereby placed outside the pale of the law's protection.

Upon this theory, appellee's evidence was submitted. He proposed, by his first witness, Olin, to prove the efforts made to procure Nye's children to carry this certificate. Upon objections being made, Mr. Smith, one of the counsel for appellee, stated: "I submit, may the court please, that that is competent to show the circumstances as bearing upon the question whether or not this is a wagering policy." The evidence was admitted and the circumstances attending the assignment were fully developed by appellee.

In their brief, appellee's counsel state at page 19, touching this subject: "The question is, do the facts

set up in the complaint, to which a demurrer was over-ruled, or in the answers to which demurrers were sustained, or *the evidence upon which judgment was rendered* in appellee's favor, show that the transaction was a gambling or wagering contract, and thus under the ban of the law?"

Having thus himself tendered the issue as to the contract being a wagering one, and having obtained the admission of his own· evidence relative to this proposition, it would not be consistent with the principles of justice and fairness to refuse to hear the appellant upon the same subject. *Campbell* v. *Conner, Admr.*, 15 Ind. App. 23.

Nor have the appellee's counsel, in this court, made any claim that the question of wagering contract was not in issue; although they did claim that this evidence, as proof of fraudulent representations, could not be admitted for want of an issue setting up fraud.

Whether or not it would be put in issue by the general denial, had the appellee based his claim in his complaint and evidence merely upon the fact that he was the beneficiary named, we do not feel called upon to determine, although the question seems to be decided in the affirmative by *Alabama, etc., Life Ins. Co.* v. *Mobile, etc., Ins. Co.*, 81 Ala. 329.

It is most earnestly argued, by appellant's learned counsel, that appellee was not eligible to be a beneficiary under this certificate; that such certificates in such organizations are not transferable to one possessing no interest in the life of the insured; and that the purchase was purely speculative, and therefore unenforceable. If all these positions be well taken, nevertheless, upon the well-founded principles of equity and right, and under the authorities, appellee should recover the amounts by him paid out to keep the policy alive. The answers to which demurrers

were sustained did not therefore state, in any event, complete defenses to appellee's complaint. *Shonfield* v. *Turner*, 75 Tex. 324; *Downey* v. *Hoffer* 110 Pa. St. 109; *Connecticut, etc., Ins. Co.* v. *Burroughs*, 34 Conn. 305; *Lemon* v. *Phœnix, etc., Life Ins. Co.* 38 Conn. 294; *Weisert* v. *Muehl*, 81 Ky. 336; *Unity, etc., Life Ass'n* v. *Dugan*, 118 Mass. 219; Niblack Ben. Soc., section 348; Bliss Life Ins., section 350; 1 Bacon Ben. Soc., section 303; *City Sav'gs Bank* v. *Whittle*, 63 N. H. 587; *Cammack* v. *Lewis*, 15 Wall. 643; *Dutton, Admx.*, v. *Wilner*, 52 N. Y. 312; *Wainock* v. *Davis*, 104 U. S. 775; *Helmetag's Admr.* v. *Miller*, 76 Ala. 183.

Since the evidence rejected went only to prove that the investment by Olin and Metcalf was purely speculative, and since, under the authorities hereinbefore cited, they would be entitled to the return of their money and interest, we have concluded that the ends of justice will be best subserved by permitting appellee, if he so elects, to remit the excess of the judgment over that amount.

The judgment is, therefore, affirmed upon condition that appellee remits all of said judgment except $1,034.00, as of the date thereof, within 45 days. Otherwise the judgment will be reversed.

Filed April 24, 1896.

### DISSENTING OPINION.

LOTZ, J.—After having carefully considered the record in this case, I am of the opinion that the judgment rendered by the Marion Superior Court should be in all things affirmed.

In the court below, the cause was tried by the court without the intervention of a jury, and the record shows that it was tried with great care.

In this court the presumptions are all in favor of the correctness and validity of the judgment rendered by the trial court. The presumption is that a public officer has done his duty, and in the case of a judgment of a court of general jurisdiction, this presumption is redoubled, for a court acts impartially upon full information and after due consideration. The law rightfully casts the burden upon those who assail a judgment in this court, to make the error manifest. This rule is imperative.

Not only must they show error, but they must show that the error affected, or probably affected, their substantial rights. They must affirmatively show harmful error.

The majority opinion holds that one paragraph of the answer (the tenth) is insufficient, but intimates that the defect may be remedied by averring a tender and offering to return the moneys received from the plaintiff. While I concur in the conclusion that the paragraph is bad for this reason, I disagree with the intimation that such an amendment alone will make this paragraph of answer sufficient. If the answer contained the amendment suggested, it would still be insufficient, in my opinion, for the reasons hereinafter stated.

The majority opinion also holds that the trial court erred in excluding the evidence offered by the appellant, as to the age of the insured, and the cause is reversed for this alleged error. I do not concur in this conclusion. There was no error in this ruling; first, because there was no issue in the case that authorized the appellant to give such evidence, and second, conceding that such evidence was admissible under the general denial, there was no showing, nor effort made to show, that either Metcalf or Olin the beneficiaries named in the certificate, had any knowledge of the

age of the insured at the time he became a member of the order, or that he was ineligible to membership. Suppose this evidence had been admitted, how could it have availed the appellant unless it was carried to the knowledge of Metcalf and Olin? How could it have affected their conduct or motives when they were ignorant of the fact?

The prevailing opinion intimates that this evidence was admissible under the general denial, and relies upon an Alabama case in support thereof. This is in direct conflict with the statute and adjudications in this State, as hereinafter demonstrated.

The prevailing opinion also asserts that appellee's counsel in their brief have admitted that this evidence was admissible under the general denial, and that such admission is binding upon them. In my opinion an appellee or his counsel cannot, by an admission made in the brief, overthrow a judgment. It is true they may confess error and thereby cause a reversal; but no confession was filed in this case. On the contrary, appellee's counsel have made an earnest effort to uphold the judgment. A judgment of a court of general jurisdiction is a solemn determination of issues of law and fact. It is the result of the processes established for the administration of justice, and is not to be lightly treated. That counsel for appellee, by an admission in their brief, cannot overthrow a judgment, was settled by the Supreme Court of this State in the recent case of *Siberry* v. *State* (decided at this term).

It is also but fair to appellee's counsel to say that they expressly denied that such evidence was admissible under the general denial. In their brief, on pages 38 and 39, they make use of this language: "The third contention of appellant is that Nye grossly misrepresented his age to the extent of at least eleven

years, and that the defendant should have been allowed to show this fact in defense. This question arises upon the sustaining of the demurrer to the 10th paragraph of answer. *We do not think it does arise under the offer to prove the fact upon the trial,* for the demurrer having been sustained to the answer, there was no issue to which such evidence was relevant." Nor does the fact that appellee made unnecessary and superfluous averments in his complaint entitle the appellant to give evidence of the age of the insured. When the appellee made proof of the death of the insured and introduced his certificate, he had established a *prima facie* case. *Supreme Lodge* v. *Johnson,* 78 Ind. 110. It was not necessary for the plaintiff to have given any evidence of the age in making out his case. The averments giving a history of the transaction were superflous. *Morris, Admr.,* v. *Stern,* 80 Ind. 227, 231 ; *Miller* v. *White River, etc., Tp.,* 101 Ind. 503, 505 ; *Terre Haute, etc., R. R. Co.* v. *McCorkle,* 140 Ind. 613 ; Saunders Pl. and Ev., Vol. 1, 7, 919; Bliss Code Pleading, section 215.

The prevailing opinion reverses the cause for the alleged error in excluding this evidence and then gives a mandate for the rendition of a judgment for a specified sum for the appellee. In *Nye* v. *Grand Lodge, etc.,* 9 Ind. App. 131, where the evidence of age was admissible under the issues, this court said: "In the absence of the proof of any age or expectancy of life of the insured, we cannot say that the sale or assignment was tainted with the vice of gambling." This language is quoted and approved by the majority opinion, and then it is assumed that a gambling transaction was established by the evidence excluded. It gives to this excluded evidence the same force as if it had been admitted, and then, without considering

the evidence of the appellee, that he had no knowledge of the age or expectancy of life of the insured, conditionally directs judgment for less than half the amount of appellee's claim. With all due respect for the opinion of the majority, I am constrained to say this is *reductio ad absurdum.* This position is illogical and highly inconsistent in my judgment. How evidence excluded can have the same force as evidence admitted, is to my mind inconceivable. It is an attempt to direct a judgment upon assumed facts, upon a suppositional case. This is contrary to the fundamental principles of English jurisprudence. The powers of a court cannot be set in motion upon a fictitious or suppositional case.

Nor do I concur in the summary manner in which the majority opinion disposes of the other important questions involved in this controversy; questions that will necessarily arise upon another trial. The statute makes it the duty of this court to give written opinions in every case that is reversed. The constitution makes it the duty of the Supreme Court to give written decisions of each question arising in the record, Art. 7, section 5, and it is the imperative duty of the court to decide every question that is necessary to the final determination of the case. *Willets* v. *Ridgeway,* 9 Ind. 367. The same rule governs this court.

In order to show that there is no reversible error in the record, it requires a statement of the issues and a consideration of the evidence and rulings of the court. The importance of the questions involved and the necessity for their decision for a final determination of the case is my apology for the long opinion following.

This action was instituted by the appellee, Metcalf, against the Supreme Lodge, Knights of Honor, appel-

lant, on a certificate of membership issued on the life of one Michael J. Nye. It appears from the averments of the complaint that the Supreme Lodge Knights of Honor, is a benevolent and charitable society or fraternity with insurance features, and does business upon the lodge plan, and is composed of Supreme, Grand and Subordinate Lodges. The society was originally organized in the State of Kentucky, in 1873, as an unincorporated society. Afterwards, in 1876, it was incorporated by a special act of the Legislature of the State of Kentucky. Nye became a member of the order in 1874. He paid his dues and assessments until 1881, when, being poor and unable to pay his assessments, he made an arrangement with the appellee, Metcalf, and one Olin, by which they paid him $300.00, and agreed to pay all future assessments and dues, and to permit Nye to have the sick benefits; and, upon his death, Metcalf and Olin to be entitled to the amount agreed to be paid, being the sum of $2,000.00. The old certificate was surrendered and a new one issued.

The appellee and Olin were named as the beneficiaries in the new certificate. Olin, prior to bringing the suit, had assigned his interest in the certificate to the appellee; but he was made a party defendant to answer as to any interest he might have therein.

Nancy J. Nye, the widow of Michael J. Nye, upon her own application, was admitted as a party, and filed several paragraphs of cross-complaint, in which she contended that she was entitled to the proceeds of the certificate. Issue was joined on the cross-complaint, and there was a finding against her; but, as she made no motion for a new trial nor took any appeal, no further attention is required as to this branch of the case.

The defendant Olin answered, disclaiming any interest in the subject-matter of the litigation.

The appellant filed several paragraphs of answer, to all of which demurrers were sustained except in the first, it being a general denial.

The trial resulted in a general finding in favor of the appellee, upon which the court, after overruling appellant's motion for a new trial, rendered judgment.

The defendant appealed to the general term of the superior court and assigned various rulings as error; but the general term affirmed the special term, and the defendant then appealed to this court, assigning as error that the general term erred in affirming the judgment rendered at the special term. The defendant demurred to the complaint for want of facts; this demurrer was overruled, and exceptions taken; but upon appeal to the general term there was no assignment of error that this ruling was erroneous, nor was there any assignment calling in question the sufficiency of the complaint. Nor is there any assignment calling in question its sufficiency in this court. The rule that a demurrer searches the record has no application in this court. In order to question any ruling of the trial court, such ruling must be assigned as error. The appellant filed eleven paragraphs of answer. The first being the general denial. The second and third were withdrawn. Separate demurrers were sustained to each of the other paragraphs, and these rulings were assigned as error in the general term. The 4th, 5th, 6th and 7th paragraphs set up special defenses. The ruling on the demurrer to each of these paragraphs is waived by a failure to discuss the same. The appellant concedes that the same questions are presented by the ruling on the 8th and 9th paragraphs.

The eighth paragraph admits that the defendant

was incorporated under the law of Kentucky, and the issuing of the certificate with Olin and Metcalf named as the beneficiaries therein; but it is further alleged in substance: that, at the time such certificate was issued, neither Olin nor Metcalf was related by blood or marriage to the member Michael J. Nye; nor were they or either of them members of his family or in any way dependent upon him; nor were they or either of them a creditor of his, or had any pecuniary interest in or reasonable expectation of acquiring any pecuniary interest in the continuance of his life; that whatever sum Olin and Metcalf paid to Nye, was paid by them solely for the purchase-money of said certificate, and that the issuing of the certificate was understood and intended by them to be for the sole purpose of transferring to Olin and Metcalf the interest Nye had in the original certificate and insurance; that thereafter, pursuant to such agreement and understanding between them, Nye paid none of the assessments made against him by the defendant, but the same were paid by Olin and Metcalf, for the purpose of keeping the certificate in force for their own benefit; that the surrender of the original certificate and the issuing of a new one payable to Olin and Metcalf, was in fact an attempted assignment of the interest of Nye in the original certificate, and that such assignment was null and void as being contrary to the public policy of the State of Kentucky, as well as contrary to the public policy of the State of Indiana.

The theory of this paragraph is that a person who has no interest in the life of another, not being related by either blood or marriage and not being dependent upon him in any way, and not being a creditor or interested in the continuation of the life of such person, cannot insure the life of such person for his own benefit, nor become the assignee of a policy of

The Supreme Lodge Knights of Honor v. Metcalf.

insurance, when he sustains no such relationship nor has any pecuniary interest in the assured.

Such policies are generally considered invalid as being against public policy, because it is supposed that the beneficiary is interested in the early death rather than the continuation of the life of the insured. Just what interest will support a policy has never been definitely adjudicated. But the authorities are all agreed that every person has an insurable interest in his own life to an unlimited extent, and that he may insure it for the benefit of a person not related to him by blood or marriage nor dependent upon him in any way, and who has no pecuniary interest in the life of the insured whatever. So long as the insured pays the premiums it is a matter of no concern to the public whom he may select as the object of his bounty. In the case at bar the original insurance was effected by the insured upon his own life. After it had been running for about seven years, he, in effect, assigned the insurance to Olin and Metcalf, by causing the original certificate to be taken up, and a new one issued in which they were named as the beneficiaries.

It is a well-known fact, of which courts take judicial knowledge, that the annual premiums or assessments of life insurance are based upon the age and expectancy of life of the person insured at the time the insurance is written. The lower the age the greater the expectancy of life, and the lower the annual premiums. The higher the age the less the expectancy of life and the higher the premiums. The annual premiums remain fixed at the rate established when the person becomes a member. It is apparent from this, that a policy of insurance which has been carried for a number of years acquires a value over and above the actual cost of the insurance. The difference in the annual premiums paid at one age and

at another higher age, is one element of value; and it often happens that the person, by reason of ill-health or over age, becomes uninsurable. Such conditions often largely enhance the value of the policy. The policy then becomes valuable property, and the insured ought to have the right to dispose of this property the same as any other chose in action, and upon the best terms he can secure. The Supreme Court of Mississippi, in *Murphy, Admr., v. Red*, 64 Miss. 614, states the correct rule in these words: "A man may have the best of reasons for wishing to dispose of the policy on his life. The exigencies of business or absolute necessity may require him to do so. He may have paid large sums in premiums and afterwards became unable to pay more, and if he is not allowed to sell or assign on the best terms he can make, the policy must be lapsed and lost. To impair the value and utility of his policy or require him to lose it on the ground that if he were to sell or assign it, the assignee or purchaser would have a motive to kill him, or that any sale or assignment he might be able to effect with one who has no insurable interest in his life, would be tainted with the vice of gambling, is, as a matter of law, extremely fanciful and unsatisfactory." But whatever may be the rule elsewhere, it is settled by the decisions in this State, decisions that are binding on this court, that such a policy is assignable. "The party holding and owning such a policy, whether on the life of another or on his own life, has a valuable interest in it, which he may assign either absolutely or by way of security, and it is assignable like any other chose in action." *Hutson, Admr., v. Merrifield, Admr.*, 51 Ind. 24; *Franklin Life Ins. Co. v. Sefton*, 53 Ind. 380; *Olmsted v. Keyes*, 85 N. Y. 593. This court recently had occasion to examine this question and reached the same conclusion. *Nye v. Grand Lodge,*

*etc., supra,* and it needs no further consideration now.

It is also well settled that a creditor· has an insurable interest in the life of his debtor. *Nye* v. *Grand Lodge, etc., supra,* and there are authorities which hold that if the assignment of a policy be invalid because the assignee has no insurable interest in the life of the assured, the assignee, nevertheless, becomes a creditor of the insured to the extent of the money paid. *Amick* v. *Butler,* 111 Ind. 578, and cases there cited. .

The appellant, however, contends 'that there is a difference between the ordinary life insurance policy and a certificate in a charitable association of the kind to which it belongs; 'that the beneficiary named in the certificate cannot acquire any interest until the death of the member, and that there was therefore no property rights which were capable of being assigned at the time Olin and Metcalf were named as the beneficiaries. It is true that there are some essential differences between such certificates and the ordinary life policy; but in many respects they are the same and governed by the same rules. In the ordinary insurance, the beneficiary, acquires an interest in the policy, and the insured cannot change the beneficiary without the consent of the one named; while in such charitable associations the beneficiary ordinarily acquires no vested interest until death, and the member has the right to make a change at any time, without the consent of the one named. But this rule does not apply where the insurance has been assigned, or a new beneficiary is named who has in good faith paid value for the certificate. To hold otherwise would be to authorize the ·member to perpetrate a fraud upon such beneficiary; to acquire his money and then deprive him of the consideration received. This contention was expressly ruled against the appellant by this

court in the case of *Nye* v. *Grand Lodge, etc., supra.*
When Nye became a member of the order, he made a
valid and binding contract of insurance which the ap-
pellant was not at liberty to repudiate so long as he
complied with the rules and regulations of the order
and paid his dues and assessments. *Hysinger* v. *Su-
preme Lodge, etc.*, 42 Mo. App. 627 (635). This contract
was assignable as any other chose in action. In this
case there was no substitution of another beneficiary
after issuing the certificate upon which this suit is
brought. The demurrer was correctly sustained to
this paragraph.

The ninth paragraph of the answer, in addition to
the averments contained in the eighth, alleges, in sub-
stance, that the law of Kentucky, under which the ap-
pellant was incorporated, provided that the objects
of the corporation (among other things) should be,
"to promote benevolence and charity by establishing
a widows and orphans' fund from which, on the satis-
factory evidence of the death of a member of the cor-
poration who has complied with its requirements, a
sum not exceeding $5,000,00 shall be paid to his
family, or as he may direct; to provide for creating
a fund for the relief of sick and distressed members,"
etc.; that pursuant to such law the defendant adopted
a constitution and by-laws, providing for the organi-
zation of State and Subordinate Lodges. In the con-
stitution and by-laws, provisions were made for issu-
ing beneficiary certificates to the members, and upon
the death of a member for the payment of $2,000.00,
"to be paid to his family or as he may direct." Pro-
vision was also made for the surrender of the cer-
tificate and the issuing of a new one to the persons
whom the member might designate. In 1881 Nye sur-
rendered his certificate, and a new one, the one de-
clared on in the complaint, was issued.

In the year 1884, the Supreme Lodge Knights of Honor removed its principal office from the State of Kentucky, and located in the city of St. Louis, in the State of Missouri, and became incorporated in the same name under the general statutes of that State, for the incorporation of such associations, and abandoned its organization and residence in the State of Kentucky, and ceased to exercise any of the franchises granted to it by that State, of which facts Nye well knew; and he afterwards recognized and submitted to the jurisdiction of the appellant after its removal and incorporation under the laws of Missouri.

The laws of Missouri, under which the appellant was incorporated, permitted the incorporation of fraternal and benevolent societies of the class to which the appellant belongs, and gave such corporations the privilege and power to provide "for the relief and aid of the families, widows, orphans or other dependents of their deceased members or by assisting such as may be sick or disabled, from the proceeds of assessments upon the members of such society or association." The statute of that State also provides that such corporation should not insure the life of any member for his own benefit or that of any other person than those above enumerated.

In 1887 the appellant adopted a code of by-laws, providing among other things that the Widows and Orphans' Benefit Fund should be paid only to such member or members of the insured's family, or person or persons dependent upon him as he should direct or designate by name. Afterwards, on the 18th day of May, 1887, the appellant adopted a resolution to the effect that all members who held benefit certificates which showed that other than relatives or dependents were named as beneficiaries therein, should be notified to

return such certificates on or before September 1, 1887, for a change in the beneficiaries, and that a new certificate would be issued in accordance with the by-laws of the order; and that in case of a failure to comply with this requirement, no assessment should be received from such member, and that he should stand suspended from and after September 1, 1887. Nye received due notice of this resolution and request, but he failed to comply therewith, although he had a wife and children dependent upon him.

The appellant insists that this paragraph was good because it shows that Olin and Metcalf did not come within the classes of beneficiaries named, either under the laws of Kentucky or of the constitution adopted after such incorporation.

It may be conceded that if any person should be designated as a beneficiary who does not come within the classes named, the designation is invalid. *Daniels, Exr.,* v. *Pratt,* 143 Mass. 216 (221); *Rindge* v. *New Eng. Mut. Aid. Soc.,* 146 Mass. 286; and that when the class of persons so benefited are designated by the act of incorporation, the corporation has no power or authority to create a fund for other persons than the classes named. *American Legion of Honor* v. *Perry,* 140 Mass. 580; *Elsey* v. *Odd Fellows', etc., Assn.,* 142 Mass. 224; and a member of such society is powerless to divert the fund from the appointed channel. *Am. Legion of Honor* v. *Smith,* 45 N. J. Eq. 466; and the association can only pay the fund to the persons designated by its constitution and by-laws or the statute creating it, and if it should promise to pay to some other person, the promise is void. *Britton* v. *Royal Arcanum,* 46 N. J. Eq. 102.

But in the case at bar neither the statute of Kentucky nor the constitution forbids the member from designating a person who was not a member of his

family nor dependent upon him. It was therein provided that the fund "shall be paid to his family, or as he may direct." This language unquestionably gave the insured the right to designate a person not a member of his family or dependent upon him, as the beneficiary. This court, in the case of *Nye* v. *Grand Lodge, etc., supra,* had occasion to construe provisions somewhat similar, and reached the conclusion, after reviewing many cases, that a person not a dependent or member of the family might be designated. If there were any doubt as to whether this construction is correct, the undisputed evidence in this case (a circular letter issued by the appellant on November 1, 1886) shows that the officers of the Grand Lodge put a construction upon these provisions; and that, prior to the incorporation under the Missouri statute, the appellant had recognized that persons not members of the family of the insured nor dependent upon him might be designated as the beneficiaries. The officers of the Grand Lodge were proper persons to construe the constitution and by-laws and determine what persons came within the designated classes. *Nye* v. *Grand Lodge, etc., supra.*

The statutes of Missouri, under which the appellant was incorporated after it changed its residence to that State, and the constitution and by-laws afterwards adopted, limited the beneficiaries to members of the family of the insured or to those dependent upon him. In the certificate declared upon in the complaint, there is a condition that the member should comply "with law, rules and regulations now governing the order or that may hereafter be enacted for its government."

The appellant insists that there was no contract between it and the beneficiaries named in the certificate,

but that the contract was between it and the member Nye.

The complaint, however, avers and recites all the facts of the surrender of the old certificate and the issuing of the new one, and the transfer of the insurance to the beneficiaries for value, and the agreement by the beneficiaries to pay all the dues and assessments made against Nye, and that the appellant had knowledge of all such facts at the time the same occurred, and consented to such transfer and received the dues and assessments from the beneficiaries, knowing that they were to receive the benefits at the death of the member. None of these facts were denied by this paragraph of answer. After the appellant has put a construction upon its charter and its constitution and by-laws, that authorized the insured to designate as beneficiaries persons not members of his family or dependent upon him; and after such beneficiaries have paid $300.00 for the insurance, and paid the dues and assessments for a period of nearly nine years, which assessments have been received by the appellant with full knowledge of all the facts, to say at the instigation of the appellant that the beneficiaries now have no property rights in the certificate and thereby escape liability would be to permit the appellant to take advantage of its own wrong, and be such a palpable injustice that no court should so decide.

The appellant further insists that as the certificate was issued upon the condition that the member should comply with all the laws then in force, or that might thereafter be enacted for the government of the order, the beneficiaries were bound by the subsequent incorporation under the laws of Missouri, which prohibited the appellee from becoming a beneficiary. It may be conceded that a person who becomes a member of a

mutual insurance company, is bound to take notice of the charter rights and the constitution and by-laws of the company, and that they become a part of the contract of insurance the same as if they were written into the policy or certificate. *Holland* v. *Taylor*, 111 Ind. 121. But it has been demonstrated that the appellee secured a vested right under the certificate, and in conformity to a contract sanctioned by the appellant and under which it has received a benefit. This vested right cannot be destroyed by a subsequent change in the charter or in the constitution and by-laws. This point was expressly ruled against the appellant, under facts somewhat similar with those at bar in the case of *Hysinger* v. *Supreme Lodge, etc.*, 42 Mo. App. 627.

The law-making power of a sovereign State cannot make laws which will deprive a citizen of his property rights without compensation, except in cases of emergency, nor impair the obligation of existing contracts between individuals. Much less can a creature of the law, by any act of its own, destroy property rights or impair its own obligations. The demurrer to this paragraph was correctly sustained.

The tenth paragraph sets up, in substance, that at the time Nye became a member of the order, there was a provision in the constitution, governing subordinate lodges, to the effect that persons over fifty-five years of age could not become a member of the order, except applicants for honorary membership, which did not entitle them to sick or death benefits; that the amount of assessments depended upon the age of the member at the time of his becoming such, varying from $1.00, in case the age was from twenty-one to forty-five, to $4.00 if the age was from fifty-four to fifty-five; that, at the time Nye became a member, there was a rule of the order, of which he had notice,

that the applicant for membership should sign a formal written application, wherein his age should be stated; that, at the time of his becoming a member, Nye was sixty years of age, and that he well knew that fact; that notwithstanding this knowledge he stated his age in said application as forty-nine years; that, at the time when the defendant received such application, and at the time when it admitted him to membership, and at the time when the several certificates of membership were issued, and at the time when it levied and collected the various assessments and received the various dues from him, it was ignorant of the fact that Nye was more than forty-nine years of age, as stated in his application, but upon the contrary it relied upon and believed such statements to be true; that the defendant had no knowledge to the contrary, or any information that would lead it to suspect to the contrary, until in the month of February, 1890; that in the meantime the defendant had paid $500.00 to Nye in sick benefits; that in the month of February, 1890, the defendant received such information as led it to order the subordinate lodge of which Nye was a member to make investigation as to the truth or falsity of the statement so made by said Nye in his application as to his age; that said investigation was at once instituted by said subordinate lodge, and conducted as speedily as practicable; and as soon as concluded a report was made by said subordinate lodge to the defendant, which was received by the defendant on the 26th day of February, 1890, (There is no statement in the answer as to what was the finding or conclusion or report of said lodge); that, while said investigation was pending, the plaintiff, who had knowledge thereof through Olin, who was an officer of the lodge, with the connivance of said Olin, and without the consent of the defendant, per-

suaded the financial reporter of the lodge to receive the sum of $15.00, which, it was estimated, would pay all dues and assessments against Nye; that as soon as the report of the subordinate lodge was received by the defendant, it ordered said subordinate lodge to receive no more dues or assessments from Nye or plaintiff, and to repay the $15.00 last paid, and to institute proceedings to expel Nye from the order; that said $15.00 was tendered back to plaintiff, who refused to accept the same; that the defendant has at all times been ready to repay said $15.00 last paid, and now brings it into court for his use and benefit; that no steps were taken to expel Nye from the order because he was taken sick shortly thereafter and died April 18, 1890.

It appears, from the averments, that Nye received and enjoyed the social advantages resulting from his membership, but such privileges are not capable of being valued in money, so that such advantages may be disregarded. So far then as the contract between the Grand Lodge, and Olin and Metcalf is concerned as shown by the allegations, it may be reduced to this: The appellant agreed to pay them $2,000.00 on the death of Nye, on condition that all assessments were paid and Nye should then be in good standing in the order. This contract does not differ materially from the ordinary insurance policy. But, according to the averments, Nye did perpetrate a fraud upon the appellant; he falsely represented his age as forty-nine, when he was sixty. He obtained membership and insurance when he was not entitled to it under the rules of the association.

The certificate declared upon, stipulates that the appellant "issues this certificate to M. W. Nye * * * * upon evidence received * * * that he has lawfully received the degree of manhood, and is a con-

tributor to the widows and orphans' benefit fund of this order; and upon condition that the statements made by said member, in his petition for membership, and the statements made by him to the medical examiner, be made a part of this contract, and upon condition that said member complies with the laws, rules and regulations now governing this order, or that may hereafter be enacted for its government, and is in good standing at the time of his death, the said Supreme Lodge hereby agrees to pay out of the Widows and Orphans' Benefit Fund to Frank W. Olin and A. C. Metcalf," $2,000.00, upon satisfactory evidence of the death of Nye. There is no stipulation in the certificate to the effect that Nye warranted the statements made by him in his application to be true, or that they were true; nor that he would forfeit his rights or the money paid in the event that any of them should prove untrue. A warranty, as that term is applied in insurance contracts, is a stipulation or agreement on the part of the insured in the nature of a condition. It enters into and forms a part of the contract itself. It defines the precise limits of the liability which the insurer undertakes to assume; and no liability can arise except within those limits. In order to charge the insurer, every one of the terms which define the obligation must be satisfied by facts which appear in the proof. Warranties create conditions precedent to the right of a recovery on the contract. The burden, however, of establishing such conditions does not necessarily rest on the holder of the policy. The breach of such conditions usually are required to be pleaded and proved by the insurer. When the breach of a condition precedent, or warranty, is involved, then there can be no recovery unless the condition is fulfilled. In this respect they differ from conditions precedent to the right to maintain the

action. But in all cases they must be contained in the policy or contract. It is true they may be contained in another instrument which is referred to and made a part of the contract. *Indiana Farmers' etc., Ins. Co. v. Byrkett*, 9 Ind. App. 443.

Representations, on the other hand, are but collateral matters. They are representations of the elements upon which to estimate the risk proposed to be assumed; they are the basis of the contract; the foundation on the faith of which it is entered into. If wrongfully or fraudulently represented in a respect material to the risk, the policy that may be issued thereon will not take effect. To enforce it would be to apply to the insurance a risk that was never presented. *Campbell* v. *New England, etc., Life Ins. Co.*, 98 Mass. 381; Cooke Life Ins., section 15. The authorities are all agreed that a breach of warranty or the falsity of a material representation, when properly pleaded and proved, will defeat a recovery upon the contract; and the rule is settled in this State that the burden of establishing such breach is upon the insurer.

It is often difficult to determine whether a statement contained in the contract is a warranty or a representation, and the authorities upon this question are not harmonious. It often becomes important to determine to which of these two classes a stipulation belongs; for there is a marked difference between the effect of a breach of warranty and the falsity of a material representation. A breach of a warranty generally works a forfeiture, while the breach of a representation does not necessarily have that effect. It is for the reason that forfeitures are not favored in the laws; that in all cases of doubt or uncertainty the courts lean to that construction most favorable to the

insured, and that a statement will be construed to be a representation rather than a warranty. Cooke Life Ins., section 16; *Alabama, etc., Life Ins. Co.* v. *Johnston*, 80 Ala. 467; *American, etc., Ins. Co.* v. *Day*, 39 N. J. L. 89.

The reference in the certificate to the terms of the application in the case before us is so uncertain that under the rules above announced it is the duty of the court to hold the statements to be representations rather than warranties. In this case, the representation as to age was a material one and of an existing fact. If the appellant should succeed in avoiding its contract, on the ground that false and fraudulent representation had been made, it would be equivalent to saying that it never made any contract that was binding upon it. In other words, that at its option the contract is rendered void from its inception.

If the appellant's position should prevail, and the paragraph be held good, we would have this anomalous condition. The appellant never was bound to pay anything, but it will be permitted to retain $650.00 of appellee's money, for which it never gave an equivalent. Such a result would be contrary to the plainest principles of justice and fair dealing. The risk and the premium go hand in hand. If there is no risk there can be no premium. The language of Lord Mansfield, in *Tyric* v. *Fletcher*, 2 Cowp. 666, is to the point: "When the risk has not been run, whether its not having been run was owing to the fault, pleasure or will of the insured or to any other cause, the premium shall be returned." See also *Phoenix Ins. Co.* v. *Tomlinson*, 125 Ind. 84. To hold otherwise, would be to say that the appellant shall have $650.00 for nothing.

In the answer before us, no offer is made to return or restore the assessments or money received. It pro-

ceeds upon the theory that they are forfeited to the appellant. The rule is well established that if a party seeks to avoid his contract on the ground of fraud, he must offer to place the other in *statu quo*. In other words, he must offer to restore what he has re-ceived in pursuance of the contract. To permit him to avoid the contract and escape liability, while retain-ing its benefits is repugnant to common honesty and fair dealing. The law will not permit him to retain the benefits of the contract and at the same time avoid its liabilities. If he retains its benefits, he waives the fraud and ratifies the contract. He will not be per-mitted to repudiate the contract in one breath and affirm it in the next. The law will not allow him to occupy inconsistent positions or to play fast and loose at his pleasure. *Shaw* v. *Barnhart, Admr.*, 17 Ind. 183.

It is also a familiar rule that if a party wishes to repudiate a contract on the ground of fraud, he must act promptly after the discovery of the fraud. After he has knowledge, he cannot retain the benefits and repudiate at his convenience or pleasure. If he neglects to act promptly, and fails to rescind and re-store, he thereby affirms the contract and cannot avoid it. *Shaw* v. *Barnhart, supra*. This paragraph of answer shows that on the 26th of February, 1890, the appellant obtained knowledge of the alleged fraud. Nye did not die until April 18, following; a period of about seven weeks after the appellant had this knowl-edge. The record also shows that the suit was com-menced on July 26, 1890, and that the appellant filed nine paragraphs of answer in succession, setting up various defenses; and the judgment of the court was taken upon demurrer, as to the validity of these de-fenses; all of which were held bad; and then, on the 18th of March, 1891, almost thirteen months after the appellant had full knowledge of the alleged fact, and

about eight months after the suit was instituted, it, for the first time, gave notice of its claim of defense on the ground of fraud.  By failing to act promptly upon the discovery of the fraud, and by failing to offer to place the appellee in *statu quo,* by an offer to restore the moneys received, the appellant will be deemed to have waived the fraud and to have ratified the contract.  The case of *Gray* v. *Nat'l Benc. Ass'n,* 111 Ind. 531, is precisely in point.  That was a suit on an accident insurance policy.  The company answered that the insured had misrepresented his age and was ineligible to membership under the by-laws of the company, but did not tender or offer to restore the premiums paid.  The court said: "If it was true, as stated in its answer, that appellee never knew that William E. Gray was under the age of eighteen years until appellee furnished it with proofs of his death, yet, as the record shows that such proofs of death were so furnished more than eighteen months before this suit was finally determined in the court below, and it does not appear that appellee had ever offered to rescind or cancel the certificate or contract sued on, or to refund the money it had received thereon, it must be held, we think, that such certificate or contract had been so ratified and confirmed by appellee as to estop it from asserting the defense to this suit attempted to be stated in the second paragraph of its answer."

The appellant asserts that the above statement is merely dictum and not necessary to have been stated in the decision of that case.  I am of a different opinion.  The answer was held bad because no copy of the by-laws was made a part of the answer, and because the retention of the premiums paid, and because the failure to act promptly operated as a waiver of the fraud and a ratification of the contract.  The demurrer to this answer admitted the facts pleaded, and

it was apparent that the effect of the retention of the premiums on the rights of the parties was necessary to be determined, in order to finally dispose of the case on another trial. If the answer had been amended by setting out a copy of the constitution and by-laws, the same question as to the effect of the retention of the moneys and failure to act promptly would still be in the case, and arise upon demurrer to the answer. It was the duty of the court to decide this question, for it was necessary to a final determination of the cause. Section 5, Art. 7, State Const.; *Willets* v. *Ridgcway, supra*. It is the duty of the appellate courts to decide all questions which are properly raised and presented and necessary to a final determination of the rights of the parties. To hold otherwise might lead to the determination of cases in piecemeal.

The appellant insists that an insurance contract is different from an ordinary contract, and that it is not necessary to return the premiums, and that the retention does not operate as a waiver of the fraud or amount to ratification of the contract. It is perhaps true that if there be a stipulation in the contract that the breach of any of its conditions, or that if any statement made by the insured should prove false, the premiums and moneys paid shall be forfeited to the insurer, then a return is unnecessary. But there is no such condition in the policy before us. The case of *Flynn* v. *Equitable Life Ins. Co.*, 78 N. Y. 568, and *Blaeser* v. *Milwaukee, etc., Ins. Co.*, 37 Wis. 31, cited by appellant, do not support its position, for in those cases there were stipulations in the policies that were violated. It must be admitted that in some of the older cases where insurance contracts were sought to be avoided on the ground of fraud, there are intimations that it is not necessary to return the premiums. These

cases do not meet my approval. In the absence of any stipulation of forfeiture, I know of no substantial reason why an insurance contract should be placed upon a different footing from any other contract; but whatever the rule is elsewhere, it is settled in this State that in the absence of a breach of warranty or a condition of forfeiture the retention of the premium operates as a waiver of the fraud and confirms the contract.

Even if the policy contains a clause that in case any of the representations or statements made in the written application are untrue "this policy shall be void." It has been held that if the company elects to avoid the policy, it must avoid it *in toto* and from the beginning. It cannot affirm it for one purpose and avoid it for another. *Schreiber* v. *German Am., etc., Ins. Co.*, 45 N. W. Rep. 708. There is nothing in this paragraph to show that any of the moneys collected by the appellant as assessments have never been paid out; for aught that appears it still has all the moneys on hand. If it were shown that all the moneys by it received had been paid out with the consent of the appellee for a given purpose, a different question might arise. But the answer does not raise this question.

This paragraph also avers that Nye received $500.00 in sick benefits, but the copy of the constitution and by-laws filed with and made a part of the answer, show that the sick benefits were paid by the local lodge and out of the dues, and that the appellant had nothing to do therewith. This is expressly admitted by appellant's counsel in these words: "This organization has a dual nature. The local or subordinate lodges are in the nature of clubs, and are independent of the Supreme Lodge in so far as local government and the payment of sick benefits are concerned. The by-laws of local lodges provide for these sick benefits,

and the Supreme Lodge is in no way responsible for their payment. The latter, however, issues the benefit certificate, like the one in suit, by which it agrees to pay a death benefit. The member pays two kinds of contributions, first, the small quarterly or monthly sums paid to the subordinate lodge, called dues, generally amounting to $6.00 per year. The "dues" form a fund out of which sick benefits are paid by the lodge to its members. The Supreme Lodge has what is known as the widows and orphans' benefit fund," which fund is created by means of monthly assessments from the members, collected by it through the subordinate lodge. Thus, in this case, Nye paid fifty cents a month dues to his local lodge, from which he might receive sick benefits if in need, and one or more monthly assessments of $1.50 to the Supreme Lodge for the widows and orphans' benefit fund."

Another insistence of the sufficiency of this paragraph is, that the contract to pay the insurance money to Nye was *ultra vires*, and void; because the constitution and by-laws forbid the appellant from insuring any person over the age of fifty-five.

If the appellant exceeded the powers given to it by its charter, then the position is well taken. The charter of a corporation is the grant of privilege or power from the State. The Kentucky statute and the Missouri statute under which the appellant was incorporated authorized it to do an insurance business. But neither of these statutes undertook to prescribe the qualifications for membership in the appellant's order. This was left to its own discretion, to be determined by rules and regulations of its own making. The appellant was not prohibited by any law under which it was incorporated from insuring a person over fifty-five years. "Where the rules and by-laws are made by the directors for their own government

in the management of the business of the corporation, it would seem to be clear that the same power which enacts can also repeal such rules and by-laws. ' They cannot be extended to affect the validity of acts done in disregard thereof, especially when the rights of . third persons are affected." *Gray* v. *Nat'l Ben. Ass'n, supra;* Woods Field Corp., section 267.

If it were true that the appellant's act was *ultra vires,* and absolutely void, it has nevertheless estopped itself from asserting the validity of its act by accepting and retaining the benefits thereof.  It is well settled that where a party has received a benefit under a semblance of authority or of law, or even under an unconstitutional law, he is estopped to deny the authority or the unconstitutionality of the law. *Cluggish* v. *Koons, Post; Vickery* v. *Board, etc.,* 134 Ind. 554.

It is also true, that generally speaking, estoppel must be specially pleaded by the party who wishes to avail himself of the act or conduct of his adversary. But to this there are exceptions.  One may acquire a right by the acts or conduct of his adversary, or he may be deprived of a right by his own acts or conduct. When it so appears, estoppel may be invoked by one party upon the pleading of his adversary. *Vickery* v. *Board, supra.*  The demurrer was correctly sustained.

The overruling of the motion for a new trial is assigned as error.

It is insisted that the transfer of the insurance to Olin and Metcalf was void as being a wagering contract.  It is well settled that if a contract is affected by the vice of gambling, courts will not enforce it. But in the case at bar all of the special answers went out on demurrer, and not one of these special answers attempted to charge that the assignment of the insurance was void because of being a wagering contract. '

No facts were pleaded in any of them showing a wager. It cannot be alleged in general terms that a contract is void because it is affected by the vice of gambling. This would be pleading a legal conclusion. The facts showing the wagering character must be specially pleaded. If it be an assignment, the amount paid for the insurance must be stated. If the disproportion between the amount paid and the face of the policy be so great, then the court may rule the transaction void as a wagering contract. *Franklin Life Ins. Co.* v. *Hazzard*, 41 Ind. 116. The case went to trial upon the general denial alone. The rule is firmly settled in this State that if a party declare upon a policy or certificate issued upon the life of another, he must aver and prove that he had an interest in the life of the person insured. But if the plaintiff be named as the beneficiary therein, he is not required to plead or prove that he had any interest therein. *Nye* v. *Grand Lodge, etc., supra.* The certificate in this case was made payable directly to the appellee. *Prima facie,* the policy or certificate belongs to the person in whose name it is effected, and the *onus* is on those who assert the contrary. *Bruce* v. *Garden*, L. R. 5 Ch. App., 31. When the appellee made proof of the death of Nye, and produced the certificate, he had established a *prima facic* case. *Supreme Lodge, etc.,* v. *Johnson, supra.* The general denial admitted the execution of the certificate. Section 367, R. S. 1894 (R. S. 1881, section 364). It devolved upon the appellant to plead affirmatively all other matters of defense. It was not entitled to show, under the general denial, that the assignment was void as a wagering contract. Nor can it, upon the evidence produced, assert that it was void as a wager. Even if the evidence adduced should establish it, the appellant is not en-

titled to draw such conclusions. There is no such issue in the case, there is no such defense.

The majority opinion holds that it was error to exclude evidence of the age of Nye, because it was a proper element to be considered in determining whether or not the contract was a wagering one. But there was no such defense pleaded. To me it is an astounding proposition that when a plaintiff declares upon a written contract for the payment of money to him upon the happening of a certain event, the defendant may, under the general denial, show that the contract was void as being affected by the vice of gambling. It is contrary to the established practice. It gives the defendant an undue advantage. He can make his defense without advising the plaintiff of what he is required to meet. The majority decision is in the very teeth of the statute. "All defenses except the mere denial of the facts alleged by the plaintiff shall be pleaded specially." Section 359, R. S. 1894.

But if it be admitted that such evidence was admissible under the general denial, there was no error in excluding it in this case. There was no effort made to show that either Olin or Metcalf had any knowledge that Nye was too old to be admitted to membership at the time he was accepted. If this evidence had been admitted, of what avail would it have been unless knowledge was carried to Olin and Metcalf? Without an offer to show that Olin and Metcalf had knowledge of such fact it could not possibly affect their conduct. No such offer or effort was made or attempted. The unequivocal and uncontradicted evidence of both of these witnesses was that they did not know his age and had no knowledge that he was too old to be eligible to membership. The uncontradicted evidence of Nye's children was that he carried his age well and did not look to be an old man.

The facts of this case concerning the issuing of the last certificate, in brief, are as follows: Nye had become unable by ill-health and other cause to continue the payment of dues and assessments required by the laws of the society, and was in such a situation that unless he could obtain assistance he would lose all the moneys theretofore paid by him and be deprived of his membership in said society, and of all the benefits flowing therefrom. He made known his condition to some of the members and officers of the subordinate lodge of which he was a member, and sought assistance from them. The defendant, Frank W. Olin, was at the time the presiding officer of the local lodge of which Nye was a member. Olin and other members of the lodge were anxious that Nye should continue to be a member in good standing, and Nye himself was anxious to maintain his membership and enjoy the privileges of the lodge, and be entitled to receive the sick benefits in case of sickness or other disability, and he was also desirous of procuring some one to make payment of such dues and assessments as would entitle him to continue in good standing as a member of the lodge. He proposed to Olin that if any person would undertake to do so and pay him, Nye, the sum of $300.00 on account of the payments theretofore made, he would surrender his benefit certificate and have a new one issued, designating such person as the beneficiary.

Olin and the appellee, Metcalf, after seeing and talking with Nye, accepted his proposition and paid him $300.00 in money, and agreed to pay all his dues and assessments and to keep him in good standing as a member of the order, he being entitled to receive the weekly benefits in case of sickness or other disability. The new certificate was issued by the Supreme Lodge under its seal, and was accepted by Nye

upon the conditions therein named, and was also countersigned by the officers of the subordinate lodge.

The appellee and Olin continued to pay the dues and assessments until the 8th day of October, 1884, when Olin, being unable longer to make the payments, it was agreed between him and the appellee, that the appellee should pay all future dues and assessments and refund to Olin all the moneys he had paid on account thereof, and that the appellee should have all the benefits accruing under the certificate. Appellee continued to pay the dues and assessments until the death of Nye, which occurred on April 18, 1890. The total amount paid by appellee, including the original purchase, amounted to about $650.00, allowing nothing for interest. The officers of the local lodge had knowledge of all these facts as they from time to time occurred. The undisputed evidence shows that the principal officers of the subordinate lodge had knowledge that Nye had assigned the insurance on his life to Olin and Metcalf for value. The constitution and by-laws of the order, introduced in evidence, make the subordinate lodges and their officers the agents and instrumentalities by which the Grand Lodge did business; and all the transactions in this case concerning Nye's membership and insurance, were done through the subordinate lodge and its officers. When an agent is acting within his powers in the performance of his principal's business, his knowledge is deemed in law to be the knowledge of his principal. So in this case, the knowledge of appellant's agent will be imputed to it, and it will be deemed to have known when the subordinate lodge accepted the assessments from Olin and Metcalf, that they were purchasers for value and that they were not members of the insured's family or dependent upon him. *Supreme Council, etc.,* v. *Boyle,* 10 Ind. App.

301.  Upon the issue joined and upon these conceded and undisputed facts and the law as applicable to them, the judgment rendered was right and should be affirmed.

Filed April 24, 1896.